[No. 81644-1. En Banc.]
Argued May 12, 2011. Decided May 3, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. DAVID W.
McCUISTION, *Petitioner*.

*Nancy P. Collins* and *David L. Donnan* (of *Washington Appellate Project*), for petitioner.

*Robert M. McKenna, Attorney General, Jeffrey T. Even, Deputy Solicitor General, Sarah Sappington* and *Todd R. Bowers, Senior Counsel,* and *Joshua Choate, Malcolm S. Ross,* and *Brooke Burbank, Assistants,* for respondent.

*William M. Van Hook,* on behalf of Kelly Cunningham, amicus curiae.

*Travis Stearns, Suzanne Elliot, Kenneth M. Chang, Kenneth P. Henrikson, Leslie J. Garrison, Peter M. MacDonald,* and *William Jaquette.* on behalf of Washington Defender Association, Washington Association of Criminal Defense Lawyers, The Defender Association, and Snohomish County Public Defender Association, amici curiae.

*David J. Hackett* and *Donald Porter,* on behalf of Daniel T. Satterberg, Prosecuting Attorney for King County, amicus curiae.

*David J. Hackett,* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

¶1 MADSEN, C.J. — Three years after he was civilly committed as a sexually violent predator (SVP), David McCuistion sought an evidentiary hearing pursuant to RCW 71.09.090(2). In support of his petition for release, Mr. McCuistion submitted a declaration from an expert stating that he had never qualified as an SVP. The trial court denied an evidentiary hearing to determine his eligibility for unconditional discharge or conditional release to a less restrictive alternative, and the Court of Appeals denied Mr. McCuistion's motion for discretionary review. Mr. McCuistion claims he was entitled to an evidentiary hearing on the basis of the evidence he presented. He further contends that the 2005 amendments to RCW 71.09.090—which allow for an evidentiary hearing only upon a showing of physiological change or a change in condition resulting from treatment— violate substantive due process and the separation of powers doctrine.

¶2 We hold that Mr. McCuistion had neither a statutory nor a constitutional right to an evidentiary hearing because

he did not present prima facie evidence that his condition had changed such that he no longer met the criteria for confinement. In addition, we hold that the challenged amendments do not violate procedural and substantive due process. Finally, we conclude that the 2005 amendments do not violate separation of powers principles.

FACTS AND PROCEDURAL HISTORY

¶3 Between 1980 and 1993, David McCuistion was convicted of a number of sex-related offenses, including attempted indecent liberties, third degree rape, phone harassment, and second and third degree assault. On October 3, 2003, following an SVP commitment trial, Mr. McCuistion was found to have satisfied the criteria for commitment as an SVP and was committed indefinitely to the care and custody of the Department of Social and Health Services (DSHS).[1] He appealed the commitment order unsuccessfully.

¶4 Pursuant to Mr. McCuistion's petition under RCW 71.09.090(2), the trial court held a show cause hearing on October 27, 2006 to determine whether Mr. McCuistion was entitled to a full evidentiary hearing concerning his eligibility for unconditional release or conditional release to a less restrictive alternative. The State submitted written annual reviews produced by DSHS in 2004 and 2005, each of which recommended continued commitment. In the 2005 annual review, Dr. Carla van Dam, PhD, indicated that Mr. McCuistion had scored highly on several risk assessment instruments; had a history of behavioral infractions; had failed to participate in substance abuse or sex offender treatment; and met diagnostic criteria for a number of psychiatric conditions, including pedophilia, paraphilia not otherwise specified, and antisocial personality disorder. She

---

[1] In October 1998, while Mr. McCuistion was still incarcerated, the State petitioned to commit him to the special commitment center. The trial court found probable cause for commitment and entered a commitment order. Due to various delays, he was not found to be an SVP and indefinitely committed as such until October 2003.

concluded that Mr. McCuistion continued to meet the definition of an SVP and that conditional release to a less restrictive alternative would threaten community safety.

¶5 In response, Mr. McCuistion submitted a declaration from Dr. Lee Coleman, MD. Dr. Coleman concluded that Mr. McCuistion did not meet—and indeed, had never met—the criteria for continued confinement.

> Given these statutory requirements, I have reviewed institutional records and professional evaluations of Mr. McCuistion and I have formed the opinion that his evaluators have not presented any evidence that such a mental abnormality exists, or has ever existed. Instead, they have relied on his past crimes: the required "mental abnormality" has been "determined" by simply summarizing his past behavior, and the "evidence" for the alleged disorder is a recitation of the details of his past behavior.

Clerk's Papers (CP) at 617 (emphasis omitted). Dr. Coleman also attacked the legitimacy of Washington's SVP commitment scheme.

> Dr. DeMarco claims that "Paraphilia Not Otherwise Specified (Nonconsent) is an accepted diagnosis among practitioners knowledgeable about sexual offenders." I believe it would be more accurate to say that the only practitioners who use this label are those who perform SVP evaluations. But regardless of how many use it, the so-called "diagnosis" is obviously nothing more than doublespeak for the crime of rape. If this is the best the evaluators are capable of doing, when seeking the "congenital or acquired condition," surely it means that the entire evaluation process is a sham created to fulfill legal and legislative agendas.

Id. at 622-23. In addition to Dr. Coleman's declaration, Mr. McCuistion submitted a law review article providing guidelines for forensic psychologists, several declarations from special commitment center (SCC) staff attesting to his good behavior throughout his stay at the SCC, and two articles providing empirical data on recidivism. One article, prepared by Canadian researchers in 2004, addressed various

predictors of recidivism for male sex offenders, including number of previous convictions, age, length of time in the community without subsequent offenses, type of crime (rape versus incest), and victims' gender. The researchers found a significant correlation between age and recidivism, finding that offenders under age 50 at the time of release were twice as likely to reoffend within 15 years as those over age 50. The other article, prepared by the Washington State Institute for Public Policy in 2004, indicated that sex offenders have lower recidivism rates than other types of offenders and that recidivism decreases with advancing age. In particular, the article stated that for every 5 years' difference in age at release, felony recidivism among sex offenders drops by 3.4 percent and violent felony recidivism by 1.4 percent.

¶6 In his briefing, Mr. McCuistion urged the trial court to consider the correlation between aging and recidivism, maintaining that according to Dr. van Dam, the "fantasies and the behaviors" associated with paraphilias " 'often diminish with advancing age in adults.' " *Id.* at 608 (quoting 2005 annual review at 16). Similarly, in an interview with Dr. van Dam, he argued that he was unlikely to reoffend because he no longer used alcohol and was older and therefore less impulsive.[2]

¶7 The trial court found that the State had met its burden to present prima facie evidence justifying continued commitment and that Mr. McCuistion had failed to present prima facie evidence that his condition had changed such that he no longer met the criteria for commitment or that conditional release to a less restrictive alternative would be appropriate. The trial court dismissed Dr. Coleman's report as "essentially a re-argument of the original finding that

---

[2] After the show cause hearing had taken place, Mr. McCuistion apparently supplemented the record with various SCC records as well as an inspection of care report addressing conditions of care at the SCC. *See* Verbatim Report of Proceedings (Oct. 27, 2006) at 19-20; CP at 574. The court found that these new materials were "relevant" but did not compel the court to order an evidentiary hearing. CP at 577.

Mr. McCuistion is a sexually violent predator" and reasoned that Dr. Coleman's disagreement "with past examiners and fact-finders does not, itself, make his opinion the correct one." *Id.* at 585. The court further explained that "[t]he change in his behavior within the confines of a secure facility does not demonstrate that his mental disorder has been changed in any way" and that "his refusal to participate in sexual deviancy treatment compounds the issue." *Id.*

¶8 Mr. McCuistion sought discretionary review in the Court of Appeals, arguing that RCW 71.09.090 violated due process and separation of powers principles and that he had presented prima facie evidence that he no longer met the criteria for commitment. The commissioner summarily dismissed Mr. McCuistion's constitutional claims, noting that the Court of Appeals had rejected similar arguments in *In re Detention of Fox*, 138 Wn. App. 374, 396-400, 158 P.3d 69 (2007) (*Fox* I).[3] Next, the commissioner concluded that Mr. McCuistion had "presented no evidence that his physical or mental condition had changed since the trial court originally found him to be a[n] SVP" and that "[w]ithout such evidence, the trial court was not required to order a new commitment trial." Ruling Den. Review, *State v. McCuistion*, No. 35805-1-II, at 7 (Wash. Ct. App. Jan. 30, 2008). A three-judge panel of the court denied McCuistion's motion to modify the commissioner's ruling.

¶9 We granted discretionary review, reversed the Court of Appeals' decision, and remanded for a show cause hearing under the pre-2005 statute. *State v. McCuistion*, No. 81644-1 (Wash. Sept. 2, 2010), *withdrawn* May 11, 2011. The State subsequently moved for reconsideration, which we granted. Order Granting Mot. for Recons., *State v. McCuistion*, No. 81644-1 (Wash. Feb. 9, 2011). We then withdrew our original opinion.

---

[3] *Fox* I was reversed on remand after this court held in *In re Detention of Elmore*, 162 Wn.2d 27, 168 P.3d 1285 (2007), that the 2005 amendments were not retroactive. *See In re Det. of Fox*, noted at 144 Wn. App. 1050, 2008 WL 2262200, 2008 Wash. App. LEXIS 1309 (*Fox* II) (reversing *Fox* I in light of *Elmore*).

## ANALYSIS

### The statutory scheme

¶10 Chapter 71.09 RCW governs the civil commitment of SVPs in Washington State. This chapter defines a sexually violent predator as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility." RCW 71.09.020(18). Under this statutory scheme, prosecutors may petition for indefinite civil commitment when a convicted sex offender is about to be released from confinement, among other circumstances. RCW 71.09.030. The filing of such a petition triggers a probable cause determination followed by a full evidentiary trial, at which the individual enjoys a panoply of procedural protections, and the fact finder must determine, beyond a reasonable doubt, whether the individual meets the definition of an SVP. RCW 71.09.040-.060. If the court or jury finds beyond a reasonable doubt that the individual is an SVP, he must be committed to the custody of the DSHS "until such time as: (a) The person's condition has so changed such that the person no longer meets the definition of a sexually violent predator; or (b) conditional release to a less restrictive alternative as set forth in RCW 71.09.092 is in the best interest of the person and conditions can be imposed that would adequately protect the community." RCW 71.09-.060(1). Once an individual has been committed, he is entitled to a written annual review by a qualified professional to ensure that he continues to meet the criteria for confinement. RCW 71.09.070.

¶11 RCW 71.09.090 sets forth the procedures by which an individual found to be an SVP may petition for unconditional discharge or conditional release to a less restrictive alternative. If, in the course of its annual review, DSHS

finds that the individual's condition has changed such that he no longer meets the definition of an SVP or conditional release to a less restrictive alternative would be appropriate, DSHS must authorize the individual to petition for unconditional discharge or conditional release to a less restrictive alternative. RCW 71.09.090(1). The court must order an evidentiary hearing upon receipt of the petition. *Id.*

¶12 Alternatively, if DSHS does not authorize such a petition, the court must set a show cause hearing unless the individual affirmatively waives the right to petition for unconditional discharge or conditional release to a less restrictive alternative. RCW 71.09.090(2)(a). The purpose of the show cause hearing is to determine whether the individual is entitled to an evidentiary hearing. *Id.* At the show cause hearing, the State bears the burden to present prima facie evidence that the individual continues to meet the definition of an SVP and that conditional release to a less restrictive alternative would be inappropriate. RCW 71.09-.090(2)(b). The court must order an evidentiary hearing if the State fails to meet its burden or, alternatively, the individual establishes probable cause to believe his "condition has so changed" that he no longer meets the definition of an SVP or that conditional release to a less restrictive alternative would be appropriate. RCW 71.09.090(1); *In re Det. of Petersen*, 145 Wn.2d 789, 798, 42 P.3d 952 (2002) (*Petersen* II) ("We hold there are two possible statutory ways for a court to determine there is probable cause to proceed to an evidentiary hearing under former RCW 71.09.090(2): (1) by deficiency in the proof submitted by the State, or (2) by sufficiency of proof by the prisoner.").

¶13 In 2005, the legislature amended RCW 71.09.090 by adding what is now subsection (4) and redesignating former subsection (4) as subsection (5). LAWS OF 2005, ch. 344, § 2. Subsection (4) provides:

> (4)(a) Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial,

or less restrictive alternative revocation proceeding, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of a sexually violent predator or that a conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed to adequately protect the community.

(b) A new trial proceeding under subsection (3) of this section[4] may be ordered, or a trial proceeding may be held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:

(i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or

(ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment.

(c) For purposes of this section, a change in a single demographic factor, without more, does not establish probable cause for a new trial proceeding under subsection (3) of this section. As used in this section, a single demographic factor includes, but is not limited to, a change in the chronological age, marital status, or gender of the committed person.

The 2005 amendments thus limited the means by which a committed person may show he has "so changed" to where he has had (1) "[a]n identified physiological change" making him "unable to commit a sexually violent act and this change is permanent," or (2) "[a] change in the person's mental condition brought about through positive response to continuing participation in treatment." RCW 71.09.090(4)(b).

---

[4] RCW 71.09.090(3) sets forth the procedures for an evidentiary hearing to determine whether an SVP is entitled to unconditional discharge or conditional release to a less restrictive alternative.

The probable cause hearing

¶14 Mr. McCuistion does not dispute the sufficiency of the State's prima facie evidence. Instead, he argues that because he presented prima facie evidence that he no longer meets the definition of an SVP, he has both a statutory and constitutional right to an evidentiary hearing. We disagree. Mr. McCuistion has failed to show a physiological change or a treatment-induced change to his mental condition, as required by RCW 71.09.090(4)(b). Moreover, even if we consider evidence beyond that which is permitted by the 2005 amendments to show Mr. McCuistion has "so changed," as the trial court did here, we would still conclude that the trial court correctly denied his request for an evidentiary hearing.

¶15 The standard of proof at the show cause hearing is "probable cause." *Petersen* II, 145 Wn.2d at 796. While the probable cause standard is not a stringent one, it allows the court to perform a critical gate-keeping function. Under this standard, a court must assume the truth of the evidence presented; it may not "weigh and measure asserted facts against potentially competing ones." *Id.* at 797. At the same time, the court can and must determine whether the asserted evidence, if believed, is *sufficient* to establish the proposition its proponent intends to prove. *Id.* at 798 ("sufficiency of proof by the prisoner" warrants evidentiary hearing). In determining whether probable cause exists, the trial court is entitled to consider all of the evidence, including evidence submitted by the State. A trial court's determination as to whether evidence establishes probable cause is subject to de novo review. *Id.* at 799.

¶16 RCW 71.09.090(2)(c) requires an individual seeking an evidentiary hearing to establish probable cause to believe his condition has changed. As the trial court recognized, Dr. Coleman's declaration is nothing more than a collateral attack on the original finding that Mr. McCuistion was an SVP; it does not demonstrate change.

¶17 As Mr. McCuistion correctly notes, the probable cause standard bars the trial court from weighing the evidence. However, at the same time, it does not require a trial court to discredit the original verdict when presented with a contrary opinion. Thus, Dr. Coleman's disagreement with previous experts was not grounds for relitigating a settled issue, and contrary to Mr. McCuistion's assertion, the trial court did not need to weigh the evidence to reach this conclusion.

¶18 Similarly, staff declarations attesting to Mr. McCuistion's good behavior at the SCC do not establish probable cause to believe that Mr. McCuistion is no longer an SVP. If believed, these declarations demonstrate that Mr. McCuistion behaves appropriately in a secure and highly structured environment. They do not suggest that Mr. McCuistion no longer suffers from a mental abnormality or personality disorder or, alternatively, that if he continues to suffer from such a condition, it would be unlikely to cause him to engage in predatory acts of sexual violence if conditionally released to a less restrictive alternative or unconditionally discharged. Moreover, these declarations speak to Mr. McCuistion's current condition—not to a change in his condition. In sum, even when taken in conjunction with Mr. McCuistion's other evidence, these declarations are insufficient to establish probable cause to believe that Mr. McCuistion's condition has changed such that he no longer meets the criteria for confinement.[5]

¶19 Further, the scientific studies Mr. McCuistion presented do not establish probable cause to believe Mr. McCuistion has changed such that he is no longer an SVP.

---

[5] By way of contrast, Mr. McCuistion asks this court to take judicial notice of disciplinary problems among other SCC residents, as described in major newspapers. Even if we were to take judicial notice of this evidence and consider it in conjunction with Mr. McCuistion's other evidence, it is not sufficient to establish probable cause. Though not all SCC residents behave well in a secure facility, evidence of a resident's good behavior at the SCC does not provide a sufficient basis for a court to conclude that Mr. McCuistion no longer meets the definition of an SVP.

The data Mr. McCuistion presented on aging and recidivism showed a significant difference in recidivism between offenders older than 50 and younger than 50; it did not demonstrate a correlation between age and recidivism *within* each of these subcategories. Mr. McCuistion was 45 years old at the time of the show cause hearing and thus not within the age category with lower recidivism rates. More importantly, he had aged only three years since the initial commitment order, and he has failed to demonstrate that a three-year age difference had a measurable effect on his risk of reoffending. Thus, despite Mr. McCuistion's vague assertions that he had become less impulsive with age, the evidence he presented was insufficient to establish probable cause to believe that his condition had "so changed." RCW 71.09.090(2)(a).

¶20 Likewise, his bare assertion that he no longer consumed alcohol, coupled with his failure to participate in substance abuse treatment while confined, does not establish probable cause to believe he no longer meets the criteria for confinement. In sum, we hold that the trial court's denial of an evidentiary hearing comported with the statutory requirement that a full evidentiary hearing be granted only if Mr. McCuistion met his probable cause burden to show change as specified by RCW 71.09.090, both pre- and post-2005 amendments.

¶21 Mr. McCuistion next contends that he is entitled to an evidentiary hearing as a matter of substantive due process. Again, Mr. McCuistion is mistaken. Requiring change as a prerequisite for an evidentiary hearing—a statutory requirement that pre-dated the 2005 amendments—does not offend substantive due process principles.

¶22 Under the due process clause of the Fourteenth Amendment, an individual subject to civil commitment is entitled to release upon a showing that he is no longer mentally ill or dangerous. *Foucha v. Louisiana*, 504 U.S. 71, 77-78, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992); *O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975); *Jones v. United States*, 463 U.S. 354, 368, 103 S.

Ct. 3043, 77 L. Ed. 2d 694 (1983). However, once a fact-finder has determined that an individual meets the criteria for commitment as an SVP, the court accepts this initial conclusion as a verity in determining whether an individual is mentally ill and dangerous at a later date. *Cf. Burke v. Pepsi-Cola Bottling Co. of Yakima*, 64 Wn.2d 244, 246, 391 P.2d 194 (1964) (court may not substitute its judgment for that of the jury where there is evidence that, if believed, would support the verdict); *City of Aberdeen v. Regan*, 170 Wn.2d 103, 108, 239 P.3d 1102 (2010) ("Collateral estoppel works to prevent litigation of issues that were resolved in a prior proceeding."). Accordingly, where an individual was found beyond reasonable doubt to be mentally ill and dangerous at the time of his commitment trial, a showing that he no longer satisfies the constitutional criteria for confinement necessarily requires a showing of change. *See* LAWS OF 2005 ch. 344, § 1 ("These provisions are intended only to provide a method of revisiting the indefinite commitment due to a relevant change in the person's condition, not an alternate method of collaterally attacking a person's indefinite commitment for reasons unrelated to a change in condition.").

¶23 Substantive due process requires only that the State conduct periodic review of the patient's suitability for release. *Jones*, 463 U.S. at 368. A committed person's statutory right to show his condition has "so changed" provides additional safeguards that go beyond the requirements of substantive due process. *See id.* There is no substantive due process right to a full annual evidentiary hearing based upon a mere showing of a change in a single demographic factor. *See id.* To conclude otherwise would lead to an endless cycle of review and rereview.

¶24 Indeed, this court already has upheld the pre-2005 requirement that an individual seeking an evidentiary hearing present prima facie evidence of a change in condition. In *In re Personal Restraint of Young*, 122 Wn.2d 1, 39, 857 P.2d 989 (1993) (*Young* I), we considered and rejected a substantive due process challenge to our SVP commitment scheme, holding that the procedural safeguards at the

initial commitment hearing and the procedures for periodic review under former RCW 71.09.090 were sufficient to ensure that "the commitment is tailored to the nature and duration of the mental illness." *See also In re Det. of Petersen*, 138 Wn.2d 70, 81, 980 P.2d 1204 (1999) (*Petersen I*) ("Our sexually violent predator statute unequivocally contemplates an indefinite term of commitment, not a series of fixed one-year terms with continued commitment having to be justified beyond a reasonable doubt *annually* at evidentiary hearings where the State bears the burden of proof.").

■ ■ ¶25 The statutory standard for continuing Mr. McCuistion's involuntary commitment remains unchanged by the 2005 amendments. The State must provide an evaluation on a yearly basis demonstrating that Mr. McCuistion continues to meet the definition of an SVP. Because the State concluded from its annual review that McCuistion continued to meet this definition, we hold that the trial court's order denying Mr. McCuistion's request for an evidentiary hearing comported with substantive due process requirements. Had McCuistion established probable cause to believe he had "so changed" under the requirements of the 2005 amended statute, he would have had a statutory right, not a constitutional right, to a full evidentiary hearing. While Dr. Coleman asserted in his declaration that Mr. McCuistion did not meet the criteria for confinement and indeed had never met these criteria, his declaration did not account for the discrepancy between his conclusion and the jury's initial finding that Mr. McCuistion met SVP criteria. Consequently, ordering a new trial on the basis of Dr. Coleman's declaration would have required the trial court to discredit the jury's initial determination, effectively allowing Mr. McCuistion to collaterally attack his commitment.[6]

---

[6] SVPs are not precluded from collaterally attacking their initial commitment orders. However, the appropriate vehicle for a collateral attack is a personal restraint petition.

Facial challenge to the 2005 amendments

¶26 Mr. McCuistion also presents a facial challenge to the 2005 amendments to RCW 71.09.090, which allow for an evidentiary hearing only upon a showing that the individual has undergone a physiological change or a change in mental condition due to treatment. He claims the amendments violate substantive due process "by divorcing the ability to gain a new trial from [sic] question of the person's current mental state and dangerousness." Pet'r's Suppl. Br. at 3; *see* RCW 71.09.090(4). In particular, Mr. McCuistion argues:

> Using success in treatment as the only viable avenue for winning a full re-commitment trial is fraught with scientific uncertainty and unmoored from the necessary requirement that commitment may not continue when a person is not currently likely to commit sexually violent offenses due to a mental disorder.

Pet'r's Suppl. Br. at 14.

¶27 Constitutional questions are questions of law and, accordingly, are subject to de novo review. *Amunrud v. Bd. of Appeals*, 158 Wn.2d 208, 215, 143 P.3d 571 (2006). Statutes are presumed constitutional, and the burden is on the challenger to prove otherwise. *Id.*

¶28 Because civil commitment involves a massive deprivation of liberty, it must meet the demands of substantive due process. *Foucha*, 504 U.S. at 80. Liberty is a fundamental right. *Id.*; *Young* I, 122 Wn.2d at 26 (citing *United States v. Salerno*, 481 U.S. 739, 750, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)). Accordingly, a civil commitment scheme like this one is constitutional only if it is narrowly drawn to serve compelling state interests. *Young* I, 122 Wn.2d at 26. As noted, civil commitment statutes are constitutional only when both initial and continued confinement are predicated on the individual's mental abnormality and dangerousness. *Foucha*, 504 U.S. at 77-78;

*O'Connor*, 422 U.S. at 575; *Jones*, 463 U.S. at 368; *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972) ("At the least, due process requires that the nature and duration of commitment bear a reasonable relation to the purpose" of the commitment.); *Kansas v. Hendricks*, 521 U.S. 346, 358, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997) (civil commitment in sexually violent predator context requires mental abnormality rendering the individual dangerous).

¶29 Essentially, McCuistion argues that the 2005 amendments violate substantive due process because they prohibit a court from ordering a new trial even when the SVP does not meet the criteria for continued confinement. This is not the case.

¶30 In *Young* I this court held that the SVP commitment scheme satisfies substantive due process because it requires the State to prove beyond a reasonable doubt that the SVP is mentally ill and dangerous at the initial commitment hearing and that the State justify continued incarceration through an annual review. 122 Wn.2d at 26, 39; *see also* RCW 71.09.070 (requiring annual mental examination to determine whether the committed person currently meets the definition of an SVP with a report of the findings sent to the committing court). If the individual no longer meets the definition of an SVP, then "the secretary shall authorize the person to petition the court for conditional release" or "unconditional discharge" and the court "shall within forty-five days order a hearing." RCW 71.09.090(1). This statutory scheme comports with substantive due process because it does not permit continued involuntary commitment of a person who is no longer mentally ill and dangerous.

¶31 The 2005 amendments do not alter the constitutionally critical annual review scheme. Instead, the amendments only change the requirements necessary to gain a full evidentiary hearing through the statutory protections created by the show cause process. The legislature had every right to alter a scheme that provides protections

beyond what is required by substantive due process to ensure committed persons do not abuse the system to receive full annual evidentiary hearings every year based solely upon a change to a single demographic factor.

¶32 McCuistion speculates that a person who has not participated in treatment or who has a single demographic change, such as age, may nevertheless no longer be mentally ill and dangerous but remain committed; however, this argument assumes that the annual review process fails to properly identify those who are no longer mentally ill and dangerous.

¶33 " '[A] facial challenge must be rejected unless there exists *no set of circumstances* in which the statute can constitutionally be applied.' " *In re Det. of Turay*, 139 Wn.2d 379, 417 n.27, 986 P.2d 790 (1999) (quoting with approval *Ada v. Guam Soc'y of Obstetricians & Gynecologists*, 506 U.S. 1011, 1012, 113 S. Ct. 633, 121 L. Ed. 2d 564 (1992) (Scalia, J., dissenting)). As the State aptly recognizes, facial challenges are generally disfavored.

> "Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied."

Resp't's Resp. to Br. of Amicus Curiae at 1-2 (citations and internal quotation marks omitted) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-51, 128 S. Ct. 1184, 170 L. Ed. 2d 151 (2008)).

¶34 The legislature enacted the 2005 amendments to "address the 'very long-term' needs of the sexually violent predator population for treatment and the equally long-term needs of the community for protection from these

offenders." Laws of 2005, ch. 344, § 1. The legislature specifically found "that the mental abnormalities and personality disorders that make a person subject to commitment under chapter 71.09 RCW are severe and chronic and do not remit due solely to advancing age or changes in other demographic factors." *Id.* The legislature wanted to ensure that the statutory focus remains on treatment and did not want to remove the incentive for successful treatment participation. *Id.* The legislature also stated that persons committed as SVPs "generally require prolonged treatment in a secure facility followed by intensive community supervision in the cases where positive treatment gains are sufficient for community safety." *Id.*

¶35 Mr. McCuistion contends that the legislature's findings are unworthy of deference because they rested on testimony from interested parties (including the attorney representing the State in this matter and two attorneys who filed amicus briefs) rather than "detailed research." Pet'r's Answer to Amicus Filed by Wash. Ass'n of Prosecuting Attorneys at 4-6. However, also testifying in support of the 2005 amendments was Henry Richards, superintendent of the SCC and a psychologist and researcher by training. Mr. Richards provided empirical evidence in support of this legislative finding by testifying that the proposed bill "[p]revents a misapplication of relatively weak and sometimes not carefully thought through scientific evidence that really isn't scientific and it's not generally accepted and hasn't really been empirically validated, certainly on our population." Hr'g on S.B. 5582 Before H. Criminal Justice & Corrections Comm., 59th Leg., Reg. Sess. (Wash. Mar. 25, 2005). He further testified that "most of what we know about the science says that any estimates tend to push their severity toward the extreme, toward the more severe, not some sort of simple algorithm where we would reduce their risk by the mere passage of time." *Id.* We have no basis to discredit the legislature's empirical findings on this matter.

¶36 *Hendricks*, 521 U.S. 346, is instructive. In upholding Kansas' sexually violent predator act, the United States

Supreme Court rejected the detainee's argument that the statutory term "mental abnormality," a term developed by the state legislature and not the psychiatric community, conflicted with the Court's long standing requirement that an individual subject to civil commitment suffer from a "mental illness." *Id.* at 358-59. Citing the terms "insanity" and "competency," the Court explained that it had "traditionally left to legislators the task of defining terms of a medical nature that have legal significance." *Id.* at 359 (quoting *Jackson,* 406 U.S. at 732, 737). Referencing the widespread disagreement among psychiatric professionals concerning pedophilias and paraphilias, it further noted that "when a legislature 'undertakes to act in areas fraught with medical and scientific uncertainties, legislative options must be especially broad and courts should be cautious not to rewrite legislation.'" *Id.* at 360 n.3 (quoting *Jones,* 463 U.S. at 370).

¶37 By the same token, because predicting recidivism among SVPs is "'fraught with medical and scientific uncertainties,'" we owe substantial deference to the legislature's finding that "the mental abnormalities and personality disorders that make a person subject to commitment under chapter 71.09 RCW are severe and chronic and do not remit due solely to advancing age or changes in other demographic factors." *Id.* (quoting *Jones,* 463 U.S. at 370); Laws of 2005, ch. 344, § 1; *see Wash. State Legislature v. Lowry,* 131 Wn.2d 309, 320, 931 P.2d 885 (1997) (court defers to legislative findings of fact).

¶38 The deference we owe generally to the factual findings of the legislature also supports our conclusion that a judicial inquiry into the degree of scientific rigor underlying the findings at issue is not required. *See, e.g., City of Tacoma v. O'Brien,* 85 Wn.2d 266, 270-71, 534 P.2d 114 (1975) ("Legislatures must necessarily make inquiries and factual determinations as an incident to the process of making law, and courts ordinarily will not controvert or even question legislative findings of facts."); *Hoppe v. State,* 78 Wn.2d 164, 169, 469 P.2d 909 (1970) ("where a legislative

declaration of the basis and necessity for an enactment does appear in the enactment, that declaration is to be deemed conclusive as to the circumstances asserted and must be given effect unless, aided only by facts of which a court can take judicial notice, it can be said that the legislative declaration on its face is obviously false"); *Lenci v. City of Seattle*, 63 Wn.2d 664, 668, 388 P.2d 926 (1964) ("And, if a state of facts justifying the ordinance can reasonably be conceived to exist, such facts must be presumed to exist and the ordinance passed in conformity therewith. These rules are more than mere rules of judicial convenience. They mark the line of demarcation between legislative and judicial functions." (citation omitted)).

¶39 Mr. McCuistion fails to establish that individuals may cease to be mentally ill or dangerous without treatment or physiological change or that the 2005 amendments to chapter 71.09 RCW violate substantive due process by requiring positive change through treatment or physiological change. This is so because the statutory basis for continued commitment remains the same after the 2005 amendments: mental abnormality and dangerousness, which the State must reevaluate annually.

Procedural due process

¶40 The question of whether an individual's liberty interest is adequately protected is evaluated under procedural due process. *In re Pers. Restraint of Bush*, 164 Wn.2d 697, 704, 193 P.3d 103 (2008). Because the 2005 amendments do not alter the standard for continued commitment—that the person continues to be mentally ill and dangerous—the question is whether the 2005 requirements for establishing probable cause and thus gaining a full postcommitment hearing satisfy procedural due process.

¶41 Applying the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the State contends that the 2005 amend-

ments meet due process. Under *Mathews*, this court balances three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

¶42 Given the extensive procedural safeguards in chapter 71.09 RCW, the risk of an erroneous deprivation of liberty under the challenged amendments is low. *See id.* As noted, before the State may commit an individual as an SVP, it must hold a full evidentiary trial at which the individual enjoys an array of procedural protections and the State bears the burden to prove beyond a reasonable doubt that the individual suffers from a mental abnormality rendering him "more likely than not" to commit further sex offenses. RCW 71.09.040-.060, .020(7). Thereafter, the individual is entitled to annual written reviews by a qualified professional to ensure that he continues to meet the criteria for confinement. RCW 71.09.070. The individual is entitled to a qualified expert to assist in this determination. *Id.* Where DSHS finds that the individual no longer meets the criteria for confinement, he is entitled to an evidentiary hearing, at which he again enjoys a panoply of procedural protections. RCW 71.09.090(1), (3). Even if DSHS finds that the individual continues to meet the criteria for confinement, the individual is entitled to a show cause hearing, at which he has the right to counsel and to present responsive affidavits or declarations (though he does not enjoy the right to be present at this hearing). RCW 71.09.090(2).

¶43 As noted earlier, the 2005 amendments do not alter the standard for continued commitment. The State is still required to evaluate the SVP annually to determine whether the person continues to meet the definition of an SVP. If not, a person is entitled to a full evidentiary hearing

within 45 days. RCW 71.09.090(1). In addition, an SVP is entitled by statute to a show cause hearing where the State is required to present a prima facie case that the individual continues to be mentally ill and dangerous, and the SVP need only present evidence that refutes the State's probable cause showing. Assuming—as we must—that the legislature is correct that a single demographic is insufficient to demonstrate that the individual has "so changed" as to no longer be mentally ill and dangerous and, additionally, that change of that nature requires participation in treatment, the procedure established by the legislature ensures that individuals who remain committed continue to meet the constitutional standard for commitment, namely dangerousness and mental abnormality. Thus, it is unlikely to result in an erroneous deprivation of liberty.

¶44 Finally, the State has a substantial interest in encouraging treatment, preventing the premature release of SVPs, and avoiding the significant administrative and fiscal burdens associated with evidentiary hearings. *See Mathews*, 424 U.S. at 335. By making treatment the only viable avenue to a release trial (absent a stroke, paralysis, or other physiological change), the State creates an incentive for participation in treatment. The State directs our attention to several authorities demonstrating a link between sex offender treatment and decreased recidivism. *See, e.g.*, Grant Duwe & Robin A. Goldman, *The Impact of Prison-Based Treatment on Sex Offender Recidivism*, 21 SEXUAL ABUSE: A JOURNAL OF RESEARCH AND TREATMENT 279 (2009), http://sax.sagepub.com/content/21/3/279.abstract ("[P]articipating in treatment significantly reduced the hazard ratio for rearrest by 27% for sexual recidivism. . . . These findings are consistent with the growing body of research supporting the effectiveness of cognitive—behavioral treatment for sex offenders."). *But see, e.g.*, Robert A. Prentky et al., *Sexually Violent Predators in the Courtroom: Science on Trial*, 12 PSYCHOL. PUB. POL'Y & L. 357, 380 (2006) ("Although numerous studies have demonstrated that cognitive-behavioral

interventions can reduce sexual recidivism in the general population of sex offenders, until a sufficient number of those who are civilly committed are released into the community, it will be difficult to ascertain the efficacy of treatment in these SVP programs."). Similarly, to the extent that untreated individuals present a significant risk of reoffending, the State has an interest in protecting public safety by restricting evidentiary hearings to those who have participated in treatment.

¶45 The parties vigorously dispute the cost of release trials and the precise impact of the majority decision on the public fisc. *See* Br. of Amicus Curiae King County Prosecuting Attorney Daniel T. Satterberg at 7-8 (maintaining that a "typical" release trial "easily cost taxpayers in excess of $400,000"); Pet'r's Answer to Amicus Filed by King County Prosecutor Satterberg at 5 (arguing that "Satterberg's accounting of expenses appears unreliable and not capable of judicial notice").[7] However, we need not identify a precise dollar amount to conclude that returning to the pre-2005 regime to would have a significant fiscal impact.

¶46 In sum, although the individual's interest in liberty is substantial, so too is the State's interest in encouraging treatment and avoiding costly and unnecessary release trials, and the risk of erroneous deprivation associated with the 2005 amendments is minimal. On balance, the 2005 amendments satisfy procedural due process. *See Mathews*, 424 U.S. at 335.

---

[7] Mr. McCuistion urges this court to disregard the factual assertions in King County Prosecutor Satterberg's amicus brief, arguing that appellate briefs cannot rely on facts outside the record. However, we declined the invitation to disregard this information when we denied Mr. McCuistion's petition to strike Satterberg's brief. At the same time, by allowing answers to the State's motion for reconsideration and to the various amicus briefs filed on behalf of the State, we gave Mr. McCuistion an opportunity to counter the factual assertions of the State and its amici.

Separation of powers

 ¶47 Finally, Mr. McCuistion contends that the 2005 amendments violate the separation of powers doctrine. We disagree.

¶48 This court has drawn a clear distinction between legislative and judicial functions.

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter."

*O'Brien*, 85 Wn.2d at 272 (quoting *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67, 53 L. Ed. 150 (1908)); *see also Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 144, 744 P.2d 1032, 750 P.2d 254 (1987) ("Here, the Legislature's retroactive amendment of RCW 21.20.430 does not impede upon the court's right and duty to apply new law to the facts of this case. . . . Instead, the amendment is a legislative enactment of a facially neutral law for the court to apply to the facts before it."). In enacting the 2005 amendments, the legislature did not apply existing law to a particular set of facts but rather created a rule of general application to determine when an SVP is entitled to an evidentiary hearing. This action falls squarely within the realm of legislation. *See O'Brien*, 85 Wn.2d at 272.

¶49 A recent Court of Appeals opinion, *Fox* I, 138 Wn. App. 374, addressed a similar challenge to the 2005 amendments to RCW 71.09.090. There, Division Two held that the legislature did not violate the separation of powers doctrine in enacting the 2005 amendments because it simply provided "a facially neutral law to apply to pending litigation" and "did not engage in a case by case application of law to a specific set of facts." *Id.* at 394, 395 n.13.

¶50 Mr. McCuistion contends that the legislature invades the province of the fact finder by preventing it from considering relevant and otherwise admissible evidence as to an individual's mental condition. To the contrary, it is not unusual for the legislature to enact legislation mandating the exclusion of certain types of otherwise admissible evidence. *See, e.g.*, RCW 5.60.060 (mandating the exclusion of evidence resulting from privileged communications); RCW 9.73.050 (mandating the exclusion of evidence obtained in violation of RCW 9.73.030, which prohibits the interception and recording of private conversations).

¶51 Mr. McCuistion also argues that by enacting subsection (4) in direct response to *In re Detention of Ward*, 125 Wn. App. 381, 104 P.3d 747 (2005), and *In re Detention of Young*, 120 Wn. App. 753, 86 P.3d 810 (2004) (*Young* II), the legislature overstepped its authority by attempting to contradict previous judicial determinations. In *Young* II, an individual previously found to be an SVP sought an evidentiary hearing on the basis of an expert's opinion that he no longer met SVP criteria in light of his advanced age. 120 Wn. App. at 761. The State argued that the expert's opinion was not grounds for a new evidentiary hearing because it implied that the individual had never been an SVP and thus attacked the initial grounds for commitment. *Id.* at 762. The Court of Appeals held that the validity of Mr. Young's initial commitment was irrelevant and that due process requires an evidentiary hearing whenever an individual presents sufficient evidence to prove he does not qualify as an SVP, whether or not he has participated in treatment. *Id.* at 758 n.7, 759-60. In *Ward*, the Court of Appeals relied on *Young* II in holding that "[i]f a detainee provides new evidence establishing probable cause that he is not currently a sexually violent predator, due process requires a trial on the merits, regardless of whether his evidence could have also challenged the basis of his original commitment." 125 Wn. App. at 386. In enacting the 2005 amendments, the legislature took direct aim at these deci-

sions. LAWS OF 2005, ch. 344, § 1 ("The legislature finds that the decisions in *In re [Det. of] Young*, 120 Wn. App. 753, *review denied*, [152] Wn.2d [1007] (2004), and *In re [Det. of] Ward*, [125] Wn. App. [381] (2005) illustrate an unintended consequence of language in chapter 71.09 RCW.").

¶52 Contrary to Mr. McCuistion's contention, this legislative action did not run afoul of separation of powers principles. Both *Young* II and *Ward* were Court of Appeals decisions and, as such, did not provide the final word on the constitutionality of denying an evidentiary hearing based on actuarial evidence indicating that an individual no longer meets SVP criteria. Thus, the legislature was free to enact the legislation it did and await a final pronouncement from this court on the constitutionality of its actions.

## CONCLUSION

¶53 We hold that Mr. McCuistion had neither a statutory nor a constitutional right to an evidentiary hearing because he did not present prima facie evidence that his condition had changed such that he no longer met the criteria for confinement. In addition, we conclude that on their face and as applied to Mr. McCuistion, the challenged amendments do not violate substantive due process, procedural due process, or separation of powers principles. Accordingly, we uphold the 2005 amendments to RCW 71.09.090 and affirm the Court of Appeals.

C. JOHNSON, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶54 WIGGINS, J. (concurring in part, dissenting in part) — I agree with the majority's result, but not its reasoning. It is unnecessary to reach the constitutional issues in this case because David McCuistion lacks standing to challenge the 2005 amendments. A person cannot urge the unconstitutionality of a statute unless he or she is harmfully affected

by the particular feature of the challenged statute that violates the constitution. *State v. Lundquist*, 60 Wn.2d 397, 401, 374 P.2d 246 (1962). McCuistion challenges only the 2005 amendments to RCW 71.09.090. However, he is not harmfully affected by those amendments because he would have faced the same result under pre-2005 law; this is because he alleges *no change* in his condition, and some change is required even under pre-2005 law. We have already found the pre-2005 statute constitutional. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 39, 857 P.2d 989 (1993). Thus, I would affirm but decline to reach the constitutional issues.

¶55 STEPHENS, J. (dissenting) — This case presents a facial challenge to the 2005 amendments to the annual review process under Washington's sexually violent predator (SVP) statute, chapter 71.09 RCW. The majority holds that David McCuistion is not entitled to an evidentiary hearing under RCW 71.09.090 *regardless* of the constitutionality of the 2005 amendments because he failed to establish probable cause to believe his condition had "so changed" that he is no longer an SVP. Though unnecessary to its holding, the majority further opines that the 2005 amendments satisfy substantive due process because they do not eliminate the State's burden to establish a prima facie case justifying continued commitment. Finally, deferring to legislative "findings" concerning what evidence is relevant to decide if a committed person remains mentally ill and dangerous, the majority concludes the amended statute satisfies procedural due process.

¶56 I dissent because I believe the majority's analysis reasons away the very constitutional question we are obligated to answer. We cannot defer to legislative views on judicial facts. The 2005 amendments impermissibly truncate a court's consideration of relevant evidence at a show cause hearing under the SVP statute and thereby violate

substantive due process. I would hold the amendments are facially invalid. Whether McCuistion can show his condition has so changed to require a full evidentiary hearing under the pre-2005 statute is a question that was not asked or answered below. Accordingly, I would reverse and remand for a show cause hearing under the prior version of RCW 71.09.090.

## DISCUSSION

¶57 The SVP statute provides for the civil commitment of an individual who has been convicted of a crime of sexual violence and who suffers from a mental abnormality making him likely to reoffend. The legislature intended the SVP law to increase public safety in two ways: by incapacitating dangerous offenders and by treating them to eliminate the danger. RCW 71.09.010; *In re Pers. Restraint of Young*, 122 Wn.2d 1, 10, 857 P.2d 989 (1993). Since 1990, when the civil commitment scheme was first created, we have consistently upheld the legislature's approach to the difficult problem of recidivism among SVPs. *See Young*, 122 Wn.2d at 26 ("[T]here are no substantive constitutional impediments to the sexually violent predator scheme.").

¶58 At the same time, we have recognized that because the SVP statute contemplates indefinite civil commitment, it presents substantive due process concerns.[8] *Id.* at 25-42 (exploring several aspects of due process). Civil commitment impairs an individual's fundamental right to liberty and so is subject to strict scrutiny. *Id.* at 26. Strict scrutiny

---

[8] The majority separately addresses substantive and procedural due process, but this case is not about procedural due process. The "procedure" required under a constitutionally valid SVP statute reflects substantive limits on the power of the legislature to restrict an individual's fundamental rights. As our opinion in *Young* makes clear, the question is not what procedures are required under a balance of competing interests, but rather whether the procedures set forth in the statute are *narrowly tailored* to meet the State's compelling interest in continuing to confine mentally ill and dangerous persons. *Young*, 122 Wn.2d at 25-42. This is and always has been a question of substantive due process. *Id.* at 27; *Foucha v. Louisiana*, 504 U.S. 71, 80-83, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992).

requires that any deprivation of a fundamental right be narrowly tailored to the State's compelling interests. *Id.* The United States Supreme Court and this court have held that the State has a compelling interest in civilly committing only those who are both mentally ill and dangerous to themselves or others. *Foucha v. Louisiana*, 504 U.S. 71, 75-76, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992); *Young*, 122 Wn.2d at 27. At the initial commitment proceeding, the SVP statute satisfies strict scrutiny by requiring the State to prove beyond a reasonable doubt that the individual suffers from a mental disorder and is dangerous. *Young*, 122 Wn.2d at 27-33.

¶59 Because commitment for SVPs is indefinite in nature, the due process requirement that an SVP be mentally ill and dangerous is ongoing. *Foucha*, 504 U.S. at 77 ("[T]he acquittee may be held as long as he is both mentally ill and dangerous, but no longer."); *accord O'Connor v. Donaldson*, 422 U.S. 563, 574-76, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). This is true because a law allowing the detention of individuals who are no longer mentally ill or dangerous would not be narrowly tailored to the State's compelling interests.

¶60 We have therefore attached constitutional significance to the SVP statute's annual review process, whereby the State must show that the SVP continues to meet the standard for commitment. *Young*, 122 Wn.2d at 39; *see also In re Det. of Ambers*, 160 Wn.2d 543, 553 n.4, 559 n.7, 158 P.3d 1144 (2007) (noting the constitutional implications of annual reviews); *In re Det. of Elmore*, 162 Wn.2d 27, 36 n.8, 168 P.3d 1285 (2007) (same); *In re Det. of Petersen*, 145 Wn.2d 789, 795-96, 42 P.3d 952 (2002) (attaching constitutional significance to the burden of proof in annual reviews). In *Young*, we recognized that meaningful annual review is central to the SVP statute's constitutionality. We held that SVP commitment is narrowly tailored in part because it is "not subject to any rigid time limit," but rather is "tailored to the nature and duration of the mental illness," and because "the Statute's release provisions pro-

vide the opportunity for periodic review of the committed individual's current mental condition and continuing dangerousness to the community." *Young*, 122 Wn.2d at 39.

¶61 Each year the State must evaluate committed individuals to determine if they continue to meet the definition of an SVP. RCW 71.09.070. If the State determines that an individual is no longer mentally ill or dangerous, the State authorizes the detainee to petition for release or transfer to a less restrictive, alternative confinement. RCW 71.09.090(1). Importantly, this is not the only way a detained person may seek release or transfer; an SVP may also petition the court without the State's authorization and obtain a show cause hearing. RCW 71.09.090(2). At this hearing, the State must present prima facie evidence that the petitioner still meets the SVP definition. RCW 71.09.090(2)(b). Then, if the committed person produces evidence establishing probable cause to believe that he has "so changed" as to no longer meet the definition of an SVP, he is entitled to a full hearing. RCW 71.09.090(2)(c)(ii). He makes this showing by presenting prima facie evidence to support the finding that he no longer meets the SVP definition, with the ultimate burden remaining on the State. *Petersen*, 145 Wn.2d at 796, 798-99; *Elmore*, 162 Wn.2d at 36-37. At the full hearing, which may be a jury trial, the State must prove beyond a reasonable doubt that the committed person is mentally ill and dangerous. RCW 71.09.090(3).

¶62 In *Young*, we approved of a prior version of the SVP statute's annual review provision, finding that it satisfied substantive due process minimums. 122 Wn.2d at 39; former RCW 71.09.090 (1992). In 2005, the legislature amended the provision in response to a pair of Court of Appeals cases suggesting that demographic or scientific changes, such as a committed person's increase in age or new diagnostic procedures, could create a prima facie case that an individual had "so changed" that he no longer met

the definition of an SVP.[9] *In re Det. of Young*, 120 Wn. App. 753, 761-62, 86 P.3d 810 (2004) (age); *In re Det. of Ward*, 125 Wn. App. 381, 383, 104 P.3d 747 (2005) (diagnostic procedures); *see also Ambers*, 160 Wn.2d at 549-50 (describing these cases as the impetus behind the 2005 amendments). The 2005 amendments clarified the legislature's intent that the phrase "so changed" refers specifically to physiological and treatment-based changes, not changes of the types recognized by the Court of Appeals:

(4)(a) Probable cause exists to believe that a person's condition has "so changed," . . . only when evidence exists, since the person's last commitment trial . . . of a substantial change in the person's physical or mental condition such that the person . . . no longer meets the definition of a sexually violent predator . . . .

(b) A new trial proceeding under subsection (3) of this section may be ordered, or a trial proceeding may be held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:

(i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or

(ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment.

(c) For purposes of this section, a change in a single demographic factor, without more, does not establish probable cause

---

[9] Demographic changes are relevant because experts in SVP cases predict an individual's dangerousness using actuarial tables. *See In re Det. of Thorell*, 149 Wn.2d 724, 758, 72 P.3d 708 (2003) (permitting actuarial evidence). Some experts opine that older offenders are statistically less likely to reoffend. *See In re Det. of Young*, 120 Wn. App. 753, 760-61, 86 P.3d 810 (2004) (describing such an opinion). We recognized in *Elmore* that increasing age may support a probable cause finding. *Elmore*, 162 Wn.2d at 38.

for a new trial proceeding under subsection (3) of this section. As used in this section, a single demographic factor includes, but is not limited to, a change in the chronological age, marital status, or gender of the committed person.

RCW 71.09.090; LAWS OF 2005, ch. 344, §§ 1-2 (expressing the intent behind the addition of subsection .090(4) to the statute). Thus, the 2005 amendments altered the standard for the evidence a detainee must present to obtain a full hearing during the annual review process and effectively narrowed the universe of facts relevant to this standard.

¶63 In *Ambers*, we heard a constitutional challenge to the amendments based on the State's position that the phrase "safe to be at large" in RCW 71.09.090(4)(b)(ii) heightened the SVP's burden for obtaining a new trial, so that changes must be treatment based to entitle the SVP to a new trial. *Ambers*, 160 Wn.2d at 553, 558. In dictum, we opined that because of the State's continuing due process obligation to confine only dangerous persons, it "might be unconstitutional" to "require[ ] a more stringent standard at an annual review hearing than is required for initial commitment." *Id.* at 553 n.4 (citing *O'Connor*, 422 U.S. at 574-75). However, we did not directly address the issue because we interpreted "safe to be at large" to be equivalent to the pre-2005 standard and determined that Ambers' change was in fact treatment based. *Id.* at 557, 559 n.7.

¶64 In *Elmore*, we had to decide whether the 2005 amendments applied retroactively, which would have prevented Elmore's new commitment hearing based solely on his change in age. *Elmore*, 162 Wn.2d at 32-33, 35. We again avoided the issue of whether the 2005 amendments were constitutionally valid by interpreting them not to apply retroactively. *Id.* at 36 & n.8; *see also In re Det. of Smith*, 163 Wn.2d 699, 700-01, 184 P.3d 1261 (2008) (reversing per curiam on facts indistinguishable from *Elmore*).

¶65 Both *Ambers* and *Elmore* foreshadowed the constitutional infirmity of the 2005 amendments to the extent they might operate to impose greater restrictions on the

evidence a detainee can present to show he no longer meets the commitment standard. Indeed, we avoided the substantive due process problem only by refusing to apply the statute in the way the State advocates here. *See Ambers*, 160 Wn.2d at 558 (instead asking "only whether Ambers sufficiently demonstrated a change in his condition such that he no longer meets the definition of an SVP"); *accord Elmore*, 162 Wn.2d at 38-39. When applied to limit relevant evidence of change, the 2005 amendments undermine meaningful annual review of SVP status in precisely the way that gave us concern in *Ambers* and *Elmore*.

¶66 The majority refuses to grapple with our precedent, preferring to rely on inapplicable standards for reviewing evidence posttrial or for applying collateral estoppel. Majority at 384-85 (citing *Burke v. Pepsi-Cola Bottling Co. of Yakima*, 64 Wn.2d 244, 246, 391 P.2d 194 (1964); *City of Aberdeen v. Regan*, 170 Wn.2d 103, 108, 239 P.3d 1102 (2010)). The majority mentions *Elmore* only in a footnote and does not even acknowledge *Ambers*. Reading the majority, one would suppose our decision in *Young* found no constitutional significance in the details of the annual review process, so long as there was one. *See id.* at 385-86. Moreover, it would appear that the serious concern we expressed about the 2005 amendments in *Ambers* and *Elmore* was only so much hand wringing because it is enough that the State's evaluators may recommend release or transfer annually. *See id.* at 387-89. In short, by refusing to acknowledge the effect of the 2005 amendments on meaningful annual review, the majority reasons away any constitutional issue.[10]

---

[10] The majority apparently finds substantive due process satisfied by the statutory requirement that the State present a prima facie case for continued confinement. Majority at 388-89. It notes that a person who no longer meets the definition of an SVP would be subject to release even under RCW 71.09.090(4)'s restrictive standard. The problem remains that the 2005 amendments artificially restrict the evidence allowed to rebut the State's case. Under the majority's analysis, there would be no substantive due process concern even if the statute provided that the only evidence the SVP could offer was an opinion from the State's evaluators. But the statute authorizes a show cause hearing upon the

¶67 Contrasting the initial commitment proceeding with the annual review proceeding reveals how the 2005 amendments have unconstitutionally eroded the substantive due process protections for civil commitment. At the initial commitment proceeding, the State must prove beyond a reasonable doubt that the person to be committed is an SVP. RCW 71.09.060(1). Specifically, the State must prove that the person, inter alia, suffers from a mental abnormality or personality disorder and is likely to engage in predatory acts of sexual violence if not confined in a secure facility. RCW 71.09.020(18). If the alleged SVP can show that there is reasonable doubt as to one of these criteria, the State fails to meet its burden and the person may not be involuntarily committed. RCW 71.09.060(1).

¶68 At the annual review, the State must make a prima facie showing that the committed individual still meets the definition of an SVP, which includes a showing that he is still dangerous. The pre-2005 statute allowed the SVP to counter this showing on any number of grounds relevant to the determination of SVP status. If the committed individual produced prima facie evidence showing, for any reason, that he was not an SVP, he was entitled to a jury trial at which the State would have to prove his continued SVP status beyond a reasonable doubt. Former RCW 71.09.090 (2001). (One such reason might have been that the committed individual no longer had a high risk of recidivism.) But under the 2005 amendments to RCW 71.09.090, the SVP may counter the State's showing on only two grounds: a permanent physiological change or a treat-

SVP's own petition, regardless of whether the State believes the person has ceased to be an SVP. *See* RCW 71.09.090(2)(a) (providing for the right to petition the court without the secretary's approval). Moreover, at the show cause hearing, it is not the SVP's burden to convince the State's evaluators (or the court) that he is no longer subject to commitment. RCW 71.09.090(2)(c) (requiring only probable cause at the show cause hearing). Indeed, the court does not weigh the evidence at the show cause hearing. *Elmore*, 162 Wn.2d at 37; *Petersen*, 145 Wn.2d at 803. Rather, if the SVP makes a prima facie showing that he no longer meets the definition of an SVP, he is entitled to a full trial *by a jury*. RCW 71.09.090(3)(a). The majority's view disregards the importance of the detainee's opportunity to make a showing so long as the State makes one.

ment-based mental change. Once the State offers prima facie evidence that the individual is still an SVP, the court has no authority to order a full hearing absent evidence supporting one of these grounds. *See* RCW 71.09.090(4)(b). Furthermore, the SVP may not obtain a full hearing by showing a change in a single demographic factor, even if this change would alter the outcome of an SVP determination under the multifactor analysis that previously justified SVP commitment.[11] RCW 71.09.090(4)(c).

¶69 The flaw in the 2005 amendments is that they separate the annual review inquiry from the ultimate constitutional standard under *Foucha*, 504 U.S. at 77. The SVP statute upheld in *Young* was narrowly tailored to allow the detention only of *currently* mentally ill and dangerous individuals. 122 Wn.2d at 39. By altering the annual review standard, the 2005 amendments authorize the State to detain individuals who are no longer mentally ill and dangerous. There are a multitude of ways in which a person might potentially cease to meet the definition of an SVP and, thus, cease to be detainable under the due process standard. Yet, only two of those ways are cognizable under the 2005 amendments to the annual review provisions. By artificially limiting the type of information that is relevant to continued SVP commitment, the 2005 amendments allow the detention of someone who is no longer mentally ill or

---

[11] Predictions of future dangerousness often rely on multifactor actuarial analyses. *Thorell*, 149 Wn.2d at 753. Statistical importance attaches to each factor; that is why each one appears in the actuarial model. *See id.* Thus, a change in a single factor may lower the risk prediction so that it no longer suggests that the individual is an SVP.

The system set up by the legislature in the 2005 amendments allows the State to prove an individual's dangerousness using actuarial tables at the initial SVP commitment hearing. But at an annual review, when the same type of table predicts that the offender is no longer dangerous (e.g., because of his increase in age, change in marital status, or other demographic factor), the prediction is excluded as "irrelevant." The only "relevant" predictors allowed are physiological or treatment-based changes. As discussed above, however, evidence that the offender is no longer currently dangerous—evidence that the legislature approves of as credible and scientific when it is used by the State to commit SVPs initially—is necessarily relevant to whether the State may continue to detain someone. *See Foucha*, 504 U.S. at 77.

dangerous and therefore disrupt the narrow tailoring present in the preamendment SVP law.

¶70 The majority defers to the legislature's determination that SVPs' conditions are such that they do not abate without treatment or due to advancing age alone. Majority at 389-94. The legislature is certainly entitled to make reasonable generalizations from the available data. However, given the constitutionally protected interests at issue, the SVP statute must survive strict scrutiny. *Young*, 122 Wn.2d at 26-27. Applying this test, we do not defer to legislative pronouncements as we would under rational-basis review. It is simply not true under the SVP scheme that the *only* factors relevant to a person's current mental illness or dangerousness are permanent physiological changes or treatment-based psychological changes. The legislature has adopted a scheme that makes other evidence relevant; it cannot by legislative fiat declare that same evidence irrelevant at an annual review. Nor can it justify detaining individuals who are no longer dangerous because of its (admittedly) compelling interest in treating SVPs. *See Foucha*, 504 U.S. at 77 (holding that the State's compelling interest in detaining and treating the mentally ill is insufficient to permit the detention of mentally ill, but nondangerous, individuals).

¶71 The majority credits the State's argument that due process can be satisfied through a committed person's other avenues for relief, such as a personal restraint petition (PRP). This argument proves too much. If the 2005 amendments can be saved because an unconstitutionally detained person may file a PRP seeking relief, then *any* annual review provision, no matter how alienated from the requirements of substantive due process, would be beyond scrutiny. After all, an individual can always file a PRP to seek to prove his restraint is unlawful. *See* RAP 16.4. The inquiry must focus on the annual review procedure itself. Due process requires that this procedure be narrowly tailored to meet the State's interests, which means confining only

those individuals who continue to be both mentally ill and dangerous. Because the SVP law, as amended, is not narrowly tailored to the State's compelling interests, I would strike down the 2005 amendments as violative of substantive due process protections.

¶72 Because of the amendments' severability clause, LAWS OF 2005, ch. 344, § 3, we should remand for the lower court to consider McCuistion's petition under the pre-2005 show cause standard—that is, RCW 71.09.090 without subsection .090(4). The relevant provision, RCW 71.09.090(2)(c), reads:

> If the court at the show cause hearing determines that either: (i) The state has failed to present prima facie evidence that the committed person continues to meet the definition of a sexually violent predator . . . or (ii) probable cause exists to believe that the person's condition has so changed that: (A) The person no longer meets the definition of a sexually violent predator . . . , then the court shall set a hearing on either or both issues.

Without subsection .090(4)'s elaboration upon the phrase "so changed," this provision allows for the full range of relevant evidence to prove that a committed person no longer meets the definition of an SVP. The evidence need not pertain to a permanent physiological or treatment-based change.[12]

¶73 Ironically, the actual holding in the majority opinion is that Mr. McCuistion failed to demonstrate probable cause under the pre-2005 version of RCW 71.09.090. *See* majority at 374, 398 ("We hold that Mr. McCuistion had neither a statutory nor a constitutional right to an evidentiary hear-

---

[12] Of course, the evidence must be otherwise admissible. The concern that a single doctor, without ever examining the SVP in question, can offer an opinion supporting release is overblown. Expert opinions remain subject to challenge for admissibility under the rules of evidence and *Frye*. *See generally* ER 702-703 (regulating opinion testimony by experts); *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923) (barring new scientific evidence unless it is generally accepted in the field). Furthermore, the most the doctor's testimony can do in this situation is convince a judge to allow a jury to decide whether the committed individual remains an SVP.

ing because he did not present prima facie evidence that his condition had changed such that he no longer met the criteria for confinement."); *id.* at 382 (noting that even if the 2005 amendments are set aside, "we would still conclude that the trial court correctly denied [Mr. McCuistion's] request for an evidentiary hearing"). However, whether probable cause exists under the prior statute is a question for the trial court, applying the proper standards. We should leave the show cause hearing to the trial court.[13]

¶74 I would hold that the 2005 amendments to RCW 71.09.090 violate substantive due process and are invalid. Rather than applying the prior version of the statute for the first time on appeal, I would reverse and remand for a new show cause hearing under the pre-2005 standard. Accordingly, I respectfully dissent.

CHAMBERS, J., and ALEXANDER, J. PRO TEM., concur with STEPHENS, J.

Reconsideration denied August 17, 2012.

---

[13] Not only does the majority assume the trial court's role by conducting a show cause hearing, it improperly weighs the evidence. For example, the majority dismisses Dr. Coleman's declaration as "nothing more than a collateral attack on the original finding that Mr. McCuistion was an SVP," majority at 382, despite the fact that the declaration relies on facts *postdating* the commitment trial. *See* Clerk's Papers at 616-24 (Decl. of Lee Coleman, MD). We were not so dismissive of a similar declaration in *Elmore*, observing that "[t]he fact that Dr. Wollert previously opined that Elmore was not sexually sadistic is inapposite." 162 Wn.2d at 38. Despite the majority's protestations to the contrary, characterizing a declaration as "nothing more" than one of its conclusions does involve weighing of the evidence. My criticism of the majority should not be read to suggest I would find probable cause requiring a full evidentiary hearing. That is the issue for the trial judge.