IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

IN RE THE MATTER OF THE       )
DETENTION OF                )       No.  37423-8-III
                             )
MICHAEL A. MCHATTON,     )
                             )       PUBLISHED OPINION
                             )
                             )

FEARING, J. — Under RCW 71.09.090, must a civilly committed sexually violent person identify, for the trial court, a distinct less restrictive alternative facility appropriate for his care in order to defeat the State's prima facie case of continued confinement in the Special Commitment Center and in order to gain an evidentiary hearing for release from the Special Commitment Center to a less restrictive alternative?  We answer this convoluted question in the negative.  We remand the case to the trial court to conduct the evidentiary hearing.

## FACTS

Michael McHatton has a cognitive disability with an I.Q. of 65.  McHatton also has an extensive history of molesting young children.

By 1995, Michael McHatton had garnered at least five convictions for molesting young children.  That year, on pleading guilty to a charge of attempted child molestation

in the first degree for molesting a two-year-old child, he received a sixty-six month sentence. McHatton later confessed that he molested twelve additional unreported victims between the ages of three and four.

In April 2002, Michael McHatton stipulated to civil commitment as a sexually violent predator under chapter 71.09 RCW. The court entered an order committing McHatton to the Department of Health and Human Services (DSHS) at the Special Commitment Center on McNeil Island.

As part of Michael McHatton's confinement, DSHS conducted annual evaluations of McHatton's mental condition as required by RCW 71.09.070. When performing the evaluation, the DSHS professional must consider: (1) whether the person continues to meet the definition of a sexually violent person, (2) whether conditional release to a less restrictive alternative serves the committee's best interest, and (3) whether the court can impose conditions as part of the less restrictive alternative that adequately protects the community. RCW 71.09.070(2). A less restrictive alternative facility, as its label suggests, allows treatment in a setting less restrictive than total confinement at the Special Commitment Center. RCW 71.09.020(6). After the annual evaluation, a committed person is entitled to a show cause hearing, during which the trial court determines if the person will receive an evidentiary trial regarding unconditional discharge from the Special Commitment Center or conditional release to a less restrictive alternative. RCW 71.09.090.

In 2012, the trial court entered an order conditionally releasing Michael McHatton from the Special Commitment Center to a less restrictive alternative placement, the Secure Community Transition Facility (SCTF) in Pierce County. DSHS assigned Paula van Pul, Ph.D., a State-certified sex offender treatment provider (SOTP), to provide treatment to McHatton at the SCTF. While at SCTF, McHatton briefly returned to confinement at the Special Commitment Center due to lying to staff.

On April 25, 2016, DSHS conducted its annual review of Michael McHatton's mental condition. As a result of progress in treatment, DSHS authorized McHatton to submit a petition to reside in a community facility with even less restrictions than SCTF. A community placement alternative allows the sexually violent detainee an opportunity for more independence as he transitions into the community. The placement also allows the committee an opportunity for employment. McHatton petitioned to be placed at Aacres, a privately run less restrictive alternative facility in Spanaway. DSHS and McHatton stipulated that the petition provided probable cause to set a trial to determine if McHatton should be granted a conditional release to Aacres.

Before the trial on the 2017 petition for the less restrictive alternative at Aacres, Dale Arnold, Ph.D., a licensed psychologist, prepared for DSHS an evaluation of Michael McHatton's mental condition and the viability of the proposed placement at Aacres. The evaluation noted that McHatton suffers from a mild intellectual deficit, Tourette syndrome, attention deficit hyperactivity disorder, and fetishistic disorder. The fetish

3

entails sexual arousal from diapers and baby powder. Arnold concluded that a less restrictive placement served McHatton's best interest because his placement at the SCTF limited his ability to build social supports for leisure activities and to gain employment.

On April 27, 2017, DSHS conducted its annual review of Michael McHatton's mental condition. Pursuant to the report, a less restrictive alternative in the community served McHatton's best interest, and conditions could be imposed that would adequately protect the community.

In June 2017, the trial court entered an order of conditional release for Michael McHatton to Aacres. One special condition to release prohibited McHatton from possessing any pictures of children. Conditions incorporated into the order prohibited McHatton's possession of "pornographic materials." Clerk's Papers (CP) at 221. Due to his pedophiliac inclinations, the order defined "pornographic material" as including any images pertaining to children when used for sexual arousal. CP at 433-34.

The trial court attached the client service contract, between Aacres and DSHS for Michael McHatton's services, to the order of conditional release. The contract required Aacres to afford staffing at a level sufficient to provide community safety and to meet the requirements of McHatton's court ordered conditions. The contract further obligated Aacres to assist in developing, implementing, and supporting McHatton's treatment plans and goals and in reviewing McHatton's progress in treatment. Aacres also agreed to

provide a 1:1 staff to resident ratio in the house and on outings.  McHatton moved to

Aacres in July 2017.

In March 2018, after Michael McHatton had resided at Aacres for eight months,

DSHS evaluator Kristin Carlson, Ph.D., conducted the 2018 annual review for DSHS.

Carlson's review is the most recent DSHS annual evaluation for purposes of this appeal.

Carlson diagnosed McHatton with pedophilic disorder, fetishistic disorder, a personality

disorder, and a mild intellectual disability.  The annual review documented that,

according to McHatton's Community Corrections Officer (CCO) Tiffany Pate, McHatton

relapsed into a pattern of lying, and he broke facility rules at Aacres.  Carlson noted that,

at SCTF, McHatton engaged in recreation activities such as bowling and visits to the

Nisqually Wildlife Refuge.  Since living at Aacres, McHatton spent his free time playing

video games and performing chores.  McHatton told Carlson that he followed Aacres

rules, but he conceded instances of lying to Aacres staff.  Carlson concluded her March

28, 2018, evaluation with:

> In my professional opinion, Mr. McHatton currently meets the
> definition of a sexually violent predator.  He suffers from a mental
> abnormality and personality disorder which make him likely to engage in
> predatory acts of sexual violence if not confined in a secure facility.
> Furthermore, it is my professional opinion that Mr. McHatton's current
> conditions [at Aacres] continue to be appropriate and in his best interest at
> this time.  I hold these opinions to a reasonable degree of psychological
> certainty.

CP at 715 (boldface omitted).

On May 4, 2018, less than a year after Michael McHatton's move to Aacres, a room check by McHatton's new CCO, Marcus Miller, revealed a trove of photographs and sexual stories. The collection included seventy-six photos of minors and objects related to minors and fifty-one handwritten storylines related to sexual fantasies with minors. McHatton admitted to using the material, defined as pornography under his treatment contract, for sexual arousal and gratification. McHatton further conceded that he failed in his obligation to report his violations and deviant masturbation to his treatment provider. He hid the images between other magazines and under his bed. According to a notice of violation signed by his CCO, McHatton failed to employ tools or treatment techniques he had learned and instead decided to "feed his deviance and exacerbate his risk to the community." CP at 435.

PROCEDURE

As a result of Michael McHatton's violation of his conditions of release to Aacres, the State of Washington moved to revoke McHatton's less restrictive alternative and to return him to McNeil Island's Special Commitment Center. The State argued that the less restrictive alternative at Aacres no longer served McHatton's best interest nor adequately protected the community.

Michael McHatton responded to the State's motion by arguing that the court could modify the conditions of his release to Aacres. He maintained that, with proper oversight and support staff, he could succeed at his less restrictive alternative placement. He

6

faulted Aacres and his former CCO Tiffany Pate for his violations. He agreed he should not return to Aacres, but should be reassigned to another less restrictive alternative facility.

Apparently, DSHS transferred Michael McHatton to the Special Commitment Center pending his hearing on the revocation of his less restrictive alternative placement. In the meantime, McHatton filed a petition for release from the Special Commitment Center to a less restrictive alternative in accordance with his rights under RCW 71.09.090(2). He noted that DSHS' recent evaluation, performed by Kristin Carlson in March 2018, recommended that he remain at a less restrictive alternative facility. Because of the petition, the trial court scheduled a show cause hearing, pursuant to RCW 71.09.090(2)(a), to determine the presence of sufficient grounds to conduct an evidentiary trial on McHatton's petition.

On August 24, 2018, the trial court conducted a combined hearing on the State's motion to revoke the less restrictive alternative and the show cause hearing on Michael McHatton's petition for release to a less restrictive alternative. Granting of the State's motion would confirm McHatton's return to the Special Commitment Center. In turn, the show cause hearing would determine whether the court would conduct a trial on McHatton's petition to return to a least restrictive alternative.

Gerry Blasingame, Psy.D, a clinical psychologist who focuses on sexually violent persons with intellectual disabilities, testified for Michael McHatton. Blasingame had earlier prepared a report about McHatton's violations of rules at Aacres.

During his testimony, Gerry Blasingame characterized Michael McHatton as a "high risk, high need" offender. Report of Proceedings (RP) at 23. McHatton could not independently manage himself in the community and needed assistance with employment, medication, and sexuality.

During his testimony, Gerry Blasingame faulted Aacres for Michael McHatton's violations of the institution's rules. Aacres did not provide the services promised. Aacres prepared no behavioral support plan for McHatton, and Aacres did not provide the one-to-one staffing demanded by the DSHS contract. The inadequate staffing afforded McHatton the opportunity to act without supervision. According to McHatton, he, in the presence of Aacres staff, purchased magazines from Fred Meyer. According to Blasingame, Aacres failed to deliver day programs and vocational training. McHatton's spent most of each day on his own inside the home.

Gerry Blasingame also criticized sex offender treatment provider Paula van Pul, Michael McHatton's treatment provider, as falling below the standard of practice in the field of sexual deviancy treatment. According to Blasingame, van Pul became emotionally attached to McHatton, which attachment damaged her objectivity, resulted in leniency, and positioned McHatton to reoffend. Van Pul failed to recognize that

8

McHatton's past interest in children remained a current interest. Van Pul never prepared a written treatment plan. Blasingame blamed McHatton's former CCO Tiffany Pate for rarely searching McHatton's room and for a lack of communication with Paula van Pul. As a result, McHatton made little progress during his treatment at Aacres.

During his testimony, Gerry Blasingame acknowledged that Michael McHatton intentionally violated the court's less restrictive alternative conditions when possessing literature and photographs of minors and when hiding his sexual urges and masturbation from his treatment provider. Even so, Blasingame advised that the less restrictive alternative placement should not be revoked. He recommended that Michael McHatton be sent to a less restrictive alternative facility other than Aacres, rather than being returned to the Special Commitment Center. McHatton needed a facility that would provide frequent activities and vocational training. Blasingame proposed that DSHS assign a new sex offender treatment provider for McHatton.

During the examination of Gerry Blasingame, the following exchange occurred:

> Q. [By Michael McHatton's counsel] In terms of what you are aware what presently exists in Washington, is there a residential setting in the near term that you think he could be safely managed in the community?
> MS. CONSTANTINE: Objection as to relevance. This is about whether the current LRA [less restrictive alternative] is in the best interest to adequately protect the community. The question of whether facilities might be available is not before the Court.
> THE COURT: I don't think that's an appropriate question before the Court today, Mr. Morrison [McHatton counsel].
> MR. MORRISON: Okay. Just as an offer of proof, what I intended to elicit is the availability of both the SCTF facility where Mr. McHatton

was at, as well as the community placement with CIS [Community Integrated Services] that presently exists in Washington at places where he could be safely managed that this LRA wouldn't need to be revoked for, but I won't go further. I respect the Court's ruling.

RP at 45-46.

In a deposition presented to the court at the hearing, sex offender treatment provider Paula van Pul expressed surprise at Michael McHatton's ability to amass the amount of pictures of children found in his room. Van Pul recommended that Michael McHatton should return to SCTF, the original less restrictive alternative facility, where staff possessed training to monitor sexual offenders.

The State objected to Michael McHatton's petition for conditional release under RCW 71.09.090. During the hearing on the petition, the State relied on the 2018 annual review written by DSHS evaluator Kristin Carlson. According to the review, McHatton continued to meet the definition of a sexually violent person. The State also contended that McHatton had failed to propose a specific less restrictive alternative to the court, which would meet the requirements for a conditional release. The State's argument impliedly imposed an obligation on McHatton to present evidence of a discrete less restrictive alternative placement that would meet his needs and protect the public.

In support of his petition, Michael McHatton contended that the State held the burden of proof to show that no less restrictive alternative would be appropriate for him. He highlighted that the annual review written by Kristin Carlson stated that a less

10

restrictive alternative was in his best interest and that adequate conditions could be imposed. The State replied that Carlson conducted her review before McHatton's violations at Aacres and no DSHS evaluator had seen McHatton since.

The trial court first issued a ruling on the State's motion to revoke Michael McHatton's less restrictive alternative. The trial court found that the State proved, by a preponderance of evidence, that Michael McHatton violated his conditional release.

The trial court next denied Michael McHatton an evidentiary hearing on his petition for conditional release. In conclusions of law, the trial court wrote:

> 9. The DSHS annual review concluded that the Respondent's ordered LRA was in his best interest and contained conditions adequate to protect the community. However, the evidence before the Court as part of the revocation hearing, along with the Court's decision at that hearing, provide prima facie evidence that *the ordered LRA* [*less restrictive alternative*] *is not in the Respondent's best interest and conditions cannot be ordered to adequately protect the community*. Therefore, the State has met its burden pursuant to RCW 71.09.090(2) and no trial shall be ordered.
> 10. At the hearing, *there was no proposed LRA before the Court* other than the LRA [to Aacres] the Court ordered on June 09, 2017.

CP at 637 (emphasis added). With this latter conclusion of law, the trial court implied that it only determined whether placement at Aacres served Michael McHatton's interests and protected the public, not whether any less restrictive alternative facility could do so.

## LAW AND ANALYSIS

On discretionary review, Michael McHatton contends that the trial court erred in refusing to order a conditional release trial at the conclusion of the show cause hearing.

11

According to McHatton, the State failed in its prima facie burden of proof that no less restrictive alternative was appropriate. According to McHatton, since the State failed to meet this burden, he lacked any obligation to identify a proposed less restrictive alternative in order to gain conditional release. We agree.

Chapter 71.09 RCW, the Sexually Violent Predator Act, controls this appeal. Under the act, a sexually violent predator is:

> any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility.

RCW 71.09.020(18). After commitment to a treatment facility, a sexually violent person undergoes written annual reviews to ensure he continues to meet the criteria for confinement. RCW 71.09.070(1); *State v. McCuistion*, 174 Wn.2d 369, 379, 275 P.3d 1092 (2012). On completion of that review, the committee may obtain court review as to his continued commitment or as to release to less onerous conditions. RCW 71.09.090 governs court review and includes detailed provisions as to the respective burdens imposed on the parties during various stages of the proceeding, including a show cause hearing and a later evidentiary trial. Rather than quoting this lengthy, byzantine statute in full, we quote relevant excerpts as we engage in our analysis.

At the initial show cause hearing, the State must present minimum evidence, known as the probable cause standard, to support continued detainment at the Special

Commitment Center.  Michael McHatton argues that he is entitled to an evidentiary hearing on his petition for conditional release because the State failed to meet its prima facie burden under prong (B), the less restrictive alternative prong, of RCW 71.09.090(2)(b)(i) during the show cause hearing.  This portion of the statute declares:

> At the show cause hearing, the prosecuting agency shall present prima facie evidence establishing: (A) That the committed person continues to meet the definition of a sexually violent predator; and (B) that *a* less restrictive alternative is not in the best interest of the person and conditions cannot be imposed that adequately protect the community.

(Emphasis added.)

Michael McHatton does not contend that the State failed to submit evidence that he continued to meet the definition of a sexually violent predator.  We agree with McHatton, however, that the State failed to present evidence that a less restrictive alternative was not in McHatton's best interest and could not protect the public.  The undisputed evidence established that the State failed in its burden.

We apply de novo review to the trial court's legal conclusions that the State met the probable cause standard.  *In re Detention of Petersen*, 145 Wn.2d 789, 799, 42 P.3d 952 (2002).  While the probable cause standard is not stringent, the standard allows the court to perform a critical gate keeping function.  *State v. McCuistion*, 174 Wn.2d 369, 382 (2012).  At the show cause hearing, the trial court assumes the truth of the evidence presented.  *State v. McCuistion*, 174 Wn.2d at 382.  The trial court does not weigh and measure asserted facts against potentially competing ones.  *In re Detention of Petersen*,

13

145 Wn.2d 789, 797 (2002). The court must determine if the evidence asserted by the proponent is adequate to support the intended proposition. *State v. McCuistion*, 174 Wn.2d at 382.

Michael McHatton argues that the State did not satisfy its prima facie burden of proof because no expert witness opined, on behalf of the State, that a less restrictive alternative was unwarranted. McHatton contends that, absent such a witness, the trial court must have improperly weighed and discounted the testimony of Gerry Blasingame, who concluded that the court should permit a less restrictive alternative placement.

We disagree that the lack of a State expert witness automatically results in the trial court weighing evidence if it concludes the State met its burden. Michael McHatton cites *In re Detention of Elmore*, 162 Wn.2d 27, 37, 168 P.3d 1285 (2007), a case in which the Washington Supreme Court ruled that the trial court improperly weighed evidence at the show cause hearing. The trial court had explicitly credited the State's witnesses' opinions over opinions of detainee Keith Elmore's expert when determining whether Elmore presented sufficient evidence to meet his initial burden of whether he had changed.

Unlike in *Detention of Elmore*, Michael McHatton's trial court issued no ruling discrediting the testimony of Gerry Blasingame, McHatton's expert. More importantly, McHatton complains that the trial court weighed evidence in favor of the State when determining whether the State met its burden of proof, not when assessing whether

14

McHatton fulfilled his burden. When deciding whether the State met its burden at the show cause hearing, the trial court may consider the State's evidence even if it conflicts with that of the testimony of the detainee's expert.

Michael McHatton also contends that the State cannot meet its burden under RCW 71.09.090(2)(b)(ii)(B)(iii) absent a testifying witness, let alone an expert witness. We disagree. RCW 71.09.090 states that the State "may rely exclusively" on the required annual report made by a DSHS evaluator. RCW 71.09.090(2)(b)(ii)(B)(iii).

Michael McHatton next contends that the trial court applied the wrong legal standard when determining whether the State met its burden of proof of a prima facie case to keep McHatton at the Special Commitment Center. Despite advocating to the contrary before the trial court, the State now concedes the trial court adopted an incorrect legal standard when addressing McHatton's burden. The trial court only considered the less restrictive alternative at Aacres to have relevance because no party had identified another placement spot.

To repeat, RCW 71.09.090(2)(b)(i)(B) declares that the State must provide evidence

> that *a* less restrictive alternative is not in the best interest of the person and conditions cannot be imposed that adequately protect the community.

(Emphasis added.) Further in the burdensome statute, the language declares:

> (B) If the state produces prima facie evidence that *a* less restrictive alternative is not appropriate for the committed person, then the state's burden under (b)(i)(B) of this subsection is met.

RCW 71.09.090(2)(b)(ii) (emphasis added). In both sections of the statute, the legislature employs the indefinite article "a." Thus, the State must show that no less restrictive alternative placement would serve the committee's bests interests and protect the public. Use of the indefinite article "a" demonstrates that the less restrictive alternative involved in the State's prima facie case is undetermined. *See Department of Ecology v. City of Spokane Valley*, 167 Wn. App. 952, 965, 275 P.3d 367 (2012).

Further provisions in the statute require at least one of the parties to submit to the trial court a specific proposed less restrictive alternative. If the State fulfills the prima facie case, the burden, at the show cause hearing, shifts to the detainee to:

> Presents the court with *a specific* placement satisfying the requirements of RCW 71.09.092.

RCW 71.09.090(2)(b)(ii)(B)(II) (emphasis added). In turn, should the court determine to order a conditional release trial, the State must meet a higher burden and prove:

> beyond a reasonable doubt that conditional release to *any proposed* less restrictive alternative either: (i) Is not in the best interest of the committed person; or (ii) does not include conditions that would adequately protect the community.

RCW 71.09.090(3)(d) (emphasis added). The statute's use of the phrases "a specific placement" and "any proposed less restrictive alternative" illustrates that the legislature meant to impose on the State a burden to show no less restrictive alternative, whether

16

proposed or not, when it wrote "a less restrictive alternative" in RCW

71.09.090(2)(b)(ii)(B). When the legislature uses different words within the same statute,

we recognize that a different meaning is intended. *Columbia Riverkeeper v. Port of*

*Vancouver USA*, 188 Wn.2d 421, 439, 395 P.3d 1031 (2017).

We observe that, although he need not have done so, Michael McHatton attempted

to give evidence of a proposed less restrictive alternative during the revocation and show

cause hearing. McHatton asked Gerry Blasingame to answer whether the SCTF was an

appropriate placement or whether other less restrictive alternative settings would suffice.

The trial court sustained the State's objection to the question on relevancy grounds. Later

the State and the trial court faulted McHatton for failing to provide the evidence that

McHatton sought to supply but was prevented from supplying.

The State, despite now conceding that it advocated the wrong standard before the

trial court, requests that we affirm the trial court's ruling. The State contends that it

presented prima facie evidence that no less restrictive alternative placement would

comply with the law. We disagree.

The most recent annual evaluation provided by the State opined that Michael

McHatton remained suitable for a less restrictive alternative placement. Although the

evaluator did not know of McHatton's possession of child photographs and penning of

stories, she knew of McHatton's pattern of lying and other rule violations at Aacres. The

State could have, but failed, to provide evidence that the possession of the photographs

and the stories rendered all less restrictive alternatives inappropriate. McHatton's expert unequivocally opined that, even after the possession of pornography, a less restrictive alternative served McHatton's interests and could protect the public. The State never discounted Gerry Blasingame's testimony and never presented evidence that safeguards could not protect the community. The State ignored the evidence that McHatton lived at the SCTF, a less restrictive alternative facility, from 2012 to 2017.

## CONCLUSION

Because the State failed to fulfill its burden of presenting some evidence of the nonviability of any less restrictive alternative, we reverse the trial court and remand the case for an evidentiary hearing on whether an alternative placement is appropriate.

_____
Fearing, J.

I CONCUR:

_____
Pennell, C.J.

No. 37423-8-III

KORSMO, J. (dissenting in part) — I agree that "errors were made" and that the existence of a prima facie case needs to be reconsidered under the appropriate standard, but I disagree that we are the appropriate body to do the reconsidering. I also disagree with the majority's narrow reading of the evidence. If we were the appropriate body to consider the question, I would conclude that the State made a prima facie showing that a least restrictive alternative (LRA) is not appropriate at this time.

Normally when a trial court applies the wrong analysis to the evidence before it, we remand to the trial court to do it over again under the appropriate standard. *E.g.*, *Dreiling v. Jain*, 151 Wn.2d 900, 907, 93 P.3d 861 (2004). The parties understandably want us to resolve the issue here and now, but I do not think that prudent for a couple of reasons.[1] Appellate courts, of course, do not find facts. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). We invade the fact-finding function of the trial courts when we act in such a manner. That is particularly the case

---

[1] The State does not ask us to find facts, but to affirm on the basis of the sufficiency of the evidence to support the implicit finding that Mr. McHatton was not an appropriate LRA candidate at this time. RAP 2.5(a).

when, as here, the trial court heard testimony and engaged in its own weighing of the evidence at the revocation hearing.

A second reason not to undertake this function ourselves is the significant risk of ruling on a moot issue and creating the possibility of a conflict in rulings. There should have been subsequent annual reviews in both 2019 and 2020. Presumably the question of an LRA would have arisen in one or both of those reviews. For all this court knows, Mr. McHatton may have started a new LRA in 2019, but we, nonetheless, are ordering a new hearing on the topic two years later. Similarly, it's possible that an LRA has been rejected once or twice since the 2018 hearing. I would leave this issue to the trial court in the first instance since it can act on the basis of more current information than this court can.

Since we apparently are weighing in on the topic, I agree that the evidence from the revocation hearing permitted the trial court to determine that neither society nor Mr. McHatton would benefit from an LRA at this time. He deceived the 2018 reviewer except on those points that the staff could contradict him on. Understandably, the trial court had no reason to give any credence to the review's recommendation for a continued LRA. The trial judge had considerably more accurate and current information on Mr. McHatton than the reviewer had.

The testimony showed that Mr. McHatton lied to the reviewer about the extent of his compliance with the requirements of the LRA and, instead, had failed completely. He

2

knowingly violated every significant provision of the LRA, amassing pictures of children, writing stories about them, using both materials for purposes of arousal and gratification, and failing to turn to his treatment providers for assistance. These facts do not show failure merely at his specific treatment plan. They show that he was not ready to engage in any treatment and was unable to turn to professional help to assist in dealing with his problems. The facts likewise strongly suggest that society did not benefit from maintaining Mr. McHatton in an environment that allowed him to act on his fantasies rather that obtain treatment for them. His efforts to blame the treatment provider for his personal failure is additional evidence that the problem was with Mr. McHatton. The evidence established that he was no longer a good candidate for an LRA because he was not ready to handle the freedom offered by an LRA.

I would remand for a new show cause hearing under the appropriate standard and permit the trial judge to confirm that no intervening court decisions have decided the issue. Since the majority remands for an LRA trial, I respectfully dissent.

_____
Korsmo, J.

3