**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientslawreports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Detention of<br><br>ROBERT EUGENE LOUGH,<br><br>         Appellant. | No. 82912-2-I (consolidated with<br>No. 82913-1-I<br>No. 82126-1-I)<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

MANN, J. — Robert Lough was civilly committed under the sexually violent predator act (act), chapter 79.01 RCW, in 2015. Lough was evaluated in 2019 and 2020 by a Department of Social and Health Services (Department) evaluator as required by RCW 71.09.070. The 2019 evaluator determined that Lough still met the definition of a sexually violent predator (SVP). Lough then petitioned the trial court for an unconditional release trial under RCW 71.09.090(2), arguing that his participation in substance abuse treatment changed his condition. The trial court denied Lough's request for an unconditional release trial.

In 2020, the Department's same evaluator concluded that Lough no longer met the definition of an SVP. The Department's secretary disagreed, and under RCW

No. 82912-2-I/2

71.09.090(1)(a) declined to authorize a petition for unconditional release.  The trial court declined Lough's second petition for an unconditional release trial.

Lough appeals both trial court decisions.  We granted discretionary review and consolidated the appeals.[1]  We affirm.

I.

We begin by summarizing the act.  The act governs the civil commitment of SVPs in Washington.  The chapter defines an SVP as "any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence if not confined in a secure facility."  RCW 71.09.020(19).

At issue in these consolidated appeals are the Department's required annual evaluation under RCW 71.09.070 and the process for the committed person to petition for an unconditional release trial under RCW 71.09.090(2).  Under RCW 71.09.070, a committed SVP "shall have a current examination of his or her mental condition made by the department at least once every year."  RCW 71.09.070(1).  The report prepared by the Department's annual evaluator must consider whether:

> (a) The committed person currently meets the definition of a sexually violent predator;
>
> (b) Conditional release to a less restrictive alternative is in the best interest of the person; and
>
> (c) Conditions can be imposed that would adequately protect the community.

---

[1] Lough's appeals of the 2019 and 2020 annual review proceedings were consolidated.  See No. 82913-1-I; No. 82126-1-I.

No. 82912-2-I/3

RCW 71.09.070(2).  If the Department's secretary determines that the person's condition "has so changed that the person no longer meets the definitions of [an SVP]," then the secretary must authorize the person to petition the court for unconditional discharge or discharge to a less restricted alternative.  RCW 71.09.090(1).

If the Department's secretary determines that the person's condition has not "so changed that the person no longer meets the definition of an [SVP]," then under RCW 71.09.090(2)(a), the committed person may petition the trial court annually for an unconditional release trial.  If a petition is filed, the trial court then sets a show cause hearing to determine whether probable cause exists for an unconditional release trial.  RCW 71.09.090(2)(a).  At the show cause hearing, RCW 71.090(2)(a) establishes two ways for the trial court to determine that there is probable cause to proceed to an unconditional release trial: "(1) by deficiency in the proof submitted by the State, or (2) by sufficiency of proof by the [committed person]."  In re Det. of Petersen, 145 Wn.2d 789, 798, 42 P.3d 952 (2002).

At the show cause hearing, the State must present prima facie evidence that the committed person continues to meet the definition of an SVP.  RCW 71.09.090(2)(b)(i)(A).  If the State fails to meet this burden, the court must order an unconditional release trial.  RCW 71.09.090(2)(c)(i).  If, however, the State produces prima facie evidence that the committed person continues to be an SVP, the State's burden is met and "an unconditional release trial may not be ordered unless the committed person produces evidence satisfying: Subsection (4)(a) of this section; and subsection (4)(b)(i) or (ii) of this section."  RCW 71.09.090(2)(b)(ii)(A).  RCW

No. 82912-2-I/4

71.09.090(4)(a) and (4)(b) set out the evidence required for the committed person to establish probable cause for a release trial:

> (4)(a) Probable cause exists to believe that a person's condition has "so changed," under subsection (2) of this section, only when evidence exists, since the person's last commitment trial, or less restrictive alternative revocation proceeding, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of a sexually violent predator or that a conditional release to a less restrictive alternative is in the person's best interest and conditions can be imposed to adequately protect the community.
>
> (b) A new trial proceeding under subsection (3) of this section may be ordered, or a trial proceeding may be held, only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:
>
> (i) An identified physiological change to the person, such as paralysis, stroke, or dementia, that renders the committed person unable to commit a sexually violent act and this change is permanent; or
>
> (ii) A change in the person's mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment.

The trial court reviews the evidence presented at the show cause hearing for probable cause. State v. McCuistion, 174 Wn.2d 369, 382, 275 P.3d 1092 (2012). "While the probable cause standard is not a stringent one, it allows the court to perform a critical gate-keeping function." The court "must assume the truth of the evidence presented" but at the same time "must determine whether the asserted evidence, if believed, is sufficient to establish the proposition its proponent intends to prove." McCuistion, 174 Wn.2d at 382.

No. 82912-2-I/5

II.

A.

At 26 years old, Lough was convicted of attempted murder in the first degree and rape in the first degree after violently raping and beating a 21-year-old woman he met at a bar. Lough was sentenced to 30 years in prison. While incarcerated, Lough demonstrated behavioral problems including threats to kill staff members, sexual harassment, and assaults on other inmates. Before Lough's release from prison, the State petitioned to commit Lough as an SVP. In 2010, while detained at the Special Commitment Center (SCC) awaiting trial, Lough violently assaulted another resident after he made Lough angry. Lough pleaded guilty to assault in the third degree with the aggravating factor of substantial bodily injury to the victim and was sentenced to an exceptional sentence of 60 months in prison. He was released back to the SCC about two years later.

The civil commitment case went to a jury trial in 2015. Psychologist Richard Packard, Ph.D., testified on behalf of the State. Dr. Packard concluded that Lough suffered from antisocial personality disorder (ASPD), posttraumatic stress disorder (PTSD), and multiple substance abuse disorders in a controlled environment, including cannabis, alcohol, stimulants, and opioids. He concluded that the ASPD, PTSD, and substance abuse disorders were all linked to Lough's sexual offending.

Psychiatrist Michael First, M.D., testified as an expert witness on behalf of Lough. Dr. First agreed that Lough suffered from ASPD, but not PTSD. He rejected the PTSD diagnosis because he determined that Lough lacked enough required symptoms. Dr. First further concluded that diagnosing PTSD "depends entirely on [Lough's] self-

-5-

No. 82912-2-I/6

report," therefore, "it's very easy to malinger it." Finally, Dr. First noted that PTSD and ASPD share many symptoms.

Following a unanimous jury verdict in the State's favor, the trial court ordered Lough be committed as an SVP to the Department for control, care, and treatment under chapter 71.09 RCW.

B.

Department psychologist Elizabeth Bain, Ph.D., completed the 2019 annual review evaluation of Lough under RCW 71.09.070. Dr. Bain concluded that Lough continued to meet the SVP definition. Lough then exercised his right to petition for release under RCW 71.09.090(2). Lough supported his petition with an SVP evaluation prepared by Amy Phenix, Ph.D. Dr. Phenix confirmed that since he had been at the SCC, Lough had not participated in sex offender treatment because "his grievance thinking interferes with his ability to trust others enough to engage himself in therapeutic activities." Dr. Phenix concluded, however, that Lough did not meet the definition of an SVP because of his age, participation in substance abuse treatment, and because she did not believe he had a paraphilia.

Lough argued that Dr. Phenix's report was enough to show change through "treatment" because her report showed that Lough made progress in substance abuse classes at the SCC. Lough claimed that nothing limits "treatment" in the statute to sexual deviancy treatment. The State conversely argued that the statute defines "treatment" as sex offender specific treatment. The trial court terminated the annual review and denied Lough's petition for an evidentiary hearing. The court determined that the State established a prima facie case that Lough continues to meet the definition

-6-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of an SVP, and Lough failed to show probable cause to believe that he has "so changed" in accordance with RCW 71.09.090(4).

We granted Lough's petition for discretionary review.

C.

In the meantime, the Department went forward with Lough's 2020 review under RCW 71.09.070. Dr. Bain also conducted Lough's 2020 annual review evaluation. Dr. Bain recognized that Lough had still not participated in sex offender specific treatment and remained at risk for committing future acts of violence. But, Dr. Bain concluded that Lough's age had possibly remitted his antisocial thinking and his risk for future violent acts is likely to continue to decrease with age.

Dr. Bain's report was reviewed by the SCC's senior clinical team under the Department's regulations. WAC 388-880-058. The senior clinical team did not agree with Dr. Bain's conclusion that Lough no longer met the SVP definition. The Department secretary considered Dr. Bain's evaluation and the senior clinical team's recommendations and declined to authorize Lough to petition for release under RCW 71.09.090(1). Lough again exercised his right under RCW 71.09.090(2) to petition for release, over the secretary's objection. The petition proceeded to a new show cause hearing before the trial court. RCW 71.09.090(2)(a).

The State retained clinical psychologist Erik Fox, J.D., Ph.D., to evaluate Lough. Dr. Fox opined to a reasonable degree of psychological certainty that Lough met the definition of an SVP. Relying on Dr. Fox's report, the State moved for an order terminating the 2020 annual review proceeding. The State argued that Dr. Fox's report provided prima facie evidence to satisfy its burden that Lough continues to meet the

-7-

No. 82912-2-I/8

SVP definition. Lough claimed that denying him an unconditional release trial on these facts violated procedural and substantive due process.

The trial court found that the State had met its prima facie burden of establishing that Lough continued to meet the definition of an SVP, and that a less restrictive alternative was not in Lough's best interest. The trial court also found that Lough had not engaged in sex offender treatment at the SCC and could not put forth qualifying evidence that he had so changed through treatment. The court terminated the 2020 annual review.

We granted Lough's petition for discretionary review and consolidated Lough's appeals.

III.

Lough argues that the court erred in denying his request for an unconditional release trial during the 2019 review process because: (1) the reports completed by Dr. Phenix established probable cause that he had changed through treatment by participating in a substance abuse program, (2) if he cannot satisfy the change through treatment requirement through participation in substance abuse treatment, the statutory definition of treatment is unconstitutionally vague and violates his right to procedural due process as applied, and (3) the SCC's inability to offer treatment for his PTSD violates his right to due process.

We review a trial court's legal determination of whether evidence meets the probable cause standard de novo. McCuistion, 174 Wn.2d at 394.

No. 82912-2-I/9

A.

Lough first argues that "treatment" under the SVP statute is not limited to sex offender treatment, but should include substance abuse treatment. We disagree.

Statutory interpretation is a matter of law we review de novo. State v. Evans, 177 Wn.2d 186, 191, 298 P.3d 724 (2013). The goal of statutory interpretation is to determine and carry out the legislature's intent. State, Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). To determine legislative intent, we first examine the plain language of the statute. No further interpretation is needed when the language is clear and unambiguous. HomeStreet, Inc. v. State, Dep't of Revenue, 166 Wn.2d 444, 451, 210 P.3d 297 (2009). A statute is ambiguous if it is susceptible to more than one reasonable interpretation. Homestreet, 166 Wn.2d at 451. Words are given their ordinary meaning and each word should be given effect so that no portion of the statute is rendered superfluous. Homestreet, 166 Wn.2d at 451-52. "Where statutory language is plain and unambiguous, a statute's meaning must be derived from the wording of the statute itself." Wash. State Human Rights Comm'n v. Cheney Sch. Dist. No. 30, 97 Wn.2d 118, 121, 641 P.2d 163 (1982).

Change through treatment requires the committed person establish "[a] change in [their] mental condition brought about through positive response to continuing participation in treatment which indicates that the person meets the standard for conditional release to a less restrictive alternative or that the person would be safe to be at large if unconditionally released from commitment." RCW 71.09.090(4)(b)(ii). The change must be "substantial." RCW 71.09.090(4). The SVP statute defines "treatment" as "the sex offender specific treatment program at the special commitment center or a

-9-

No. 82912-2-I/10

specific course of sex offender treatment pursuant to RCW 71.09.092(1) and (2)."  RCW 71.09.020(21).

Lough argues that the reasonable interpretation is that the sex offender specific treatment program at the SCC includes treatment for a mental abnormality that formed a basis for civil commitment—including substance abuse treatment.  But we look to the plain language.  The statute does not state that the treatment only addresses the mental abnormality for commitment.  Rather, it requires "sex offender specific" treatment.[2]

The reasonable interpretation is that Lough must engage in treatment that addresses being a sex offender—not simply substance abuse treatment where Lough refuses to discuss his underlying sexual offense.  Moreover, the language of the statute directly narrows the scope of treatment.  The legislature was decisive and exclusive by adding "sex offender specific treatment" as a qualifier.  RCW 71.09.020(21).  We interpret the statute to give effect to each word as to render none superfluous.  Homestreet, Inc., 166 Wn.2d at 451-52.

---

[2] While our holding is supported by the plain language of the statute, we note also that the legislative history also supports the exclusion of substance abuse treatment from SVP "treatment."  The definition of "treatment" was added to RCW 71.09.020 in 2015.  LAWS OF 2015, ch. 278, § 2.  The legislative history reveals that the amendment was adopted in response to efforts to obtain new trials based on progress in treatment that is not sex offender specific treatment:

> Each year, SVPs are petitioning courts for new trials because they have expert reports that say they have changed due to treatments that are not sex offender specific.  Only this sex offender treatment will reduce recidivism if they are released into the community.  Sex offender specific treatment is designed to identify and treat the individual's dynamic risk factors.  Those risk factors have been empirically demonstrated to be related to sexual and violent recidivism.  This treatment is currently offered at the Special Commitment Center (SCC).  Therapeutic change is not a passive process; it involves active engagement of the individual and the treatment team to identify risk factors specific to that person in order to bring about change that will decrease risk for re-offense.

S.B. REP. ON H.B. 1059, at 2-3, 64th Leg., Reg. Sess. (Wash. 2015).

-10-

No. 82912-2-I/11

Lough has not participated in sex offender specific treatment while at the SCC. In 2016, Lough began attending the substance abuse self-help group, Counselor Assisted Self Help (CASH). In 2018, he was placed on "maximum benefit status" in CASH, signifying that substance abuse should no longer be a responsivity issue to sex offender treatment.[3] Lough, however, refused to participate in sex offender specific treatment at the SCC. Lough participated in Awareness and Preparation and completed the required prerequisite to sex offender treatment. He was invited to participate in sex offender treatment, but he declined. And indeed, Lough later withdrew from CASH over frustration in the discussion of sexual behavior and note taking explaining, in part: "Not until I joined your version . . . have I ever seen so many assignments involved, many of which are clearly directed at involving deviant sexual behavior or in some way, psychologically deviant thoughts."

Even though substance abuse may have been a contributing factor to Lough's sexual offending, addressing substance abuse alone does not treat the underlying ASPD and other reasons for committing such a violent sexual offense. To show that he has "so changed" through treatment, Lough must complete sexual offender specific treatment. This treatment likely addresses his dynamic risk factors and underlying reasons for his difficulty controlling his sexually violent behavior, not just abstaining from substance use.

---

[3] As explained by Elena Lopez, Psy.D., the SCC's Chief of Resident Treatment, "responsivity" addresses things that impede or facilitate progression, "so what accommodations might be necessary for someone to participate in any formal treatment process, so essentially meeting someone where they are at and addressing any sort of deficit and/or accommodation that they may need to be successful."

-11-

No. 82912-2-I/12

B.

Lough next argues that if we determine that his participation in substance abuse treatment alone cannot satisfy the "so changed" requirement, then the meaning of treatment is unconstitutionally vague. We disagree.

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct." State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). "A vagueness challenge seeks to vindicate two principles of due process: the need to define prohibited conduct with sufficient specificity to put citizens on notice of what conduct they must avoid and the need to prevent arbitrary and discriminatory law enforcement." State v. Fraser, 199 Wn.2d 465, 484, 509 P.3d 282 (2022).

A statute is vague if either "a reasonable person would not understand what conduct is prohibited or if it lacks ascertainable standards that prevent arbitrary enforcement." In re Det. of Lee, 14 Wn. App. 2d 271, 291, 471 P.3d 915 (2020). To determine whether fair notice exists, impossible standards of specificity are not required and we examine the term in the context in which it is used. Lee, 14 Wn. App. 2d at 287; Fraser, 99 Wn.2d at 484. To determine whether a statute provides adequate standards for enforcement, the court looks to whether the statute defines conduct through "inherently subjective terms." Fraser, 199 Wn.2d at 484. The statute is only vague "if it invites an inordinate amount of . . . discretion." Fraser, 199 Wn.2d at 484.

We presume statutes are constitutional. City of Bellevue v. State, 92 Wn.2d 717, 719, 600 P.2d 1268 (1979). The challenging party "carries the heavy burden of demonstrating the enactment's invalidity beyond a reasonable doubt." City of Bellevue,

-12-

No. 82912-2-I/13

92 Wn.2d at 720.  We review constitutional questions de novo.  Fraser, 199 Wn.2d at 475.

Lough argues that the statute is unconstitutionally vague because the term "sex offender specific treatment program" is so unclear as to deprive him of fair notice and the actions of the trial court and SCC treatment providers amount to arbitrary enforcement.  We disagree.

Here, an ordinary person could understand what conduct is proscribed.  It is reasonable to assume that the requirement to undergo "the sex offender specific treatment program" to mean treatment that involves discussion of the person's sex offense history and risk factors.  It is reasonable for an ordinary person to be on notice that discussing substance abuse or any other disorder without targeted discussion of sexual offending would not constitute sex offender treatment.  Requiring only treatment of substance abuse with no discussion of their sexual offense history, cycle, or risk factors, would defy the purpose of the statute in treating individuals who have been civilly committed for sexually violent offenses.

Lough also cannot prove that the "so changed" requirement is arbitrarily enforced by the SCC or the trial court.  The statutory definition of treatment does not invite an "inordinate amount of discretion."  Fraser, 199 Wn.2d at 484.  Lough must establish that he has "so changed" through sex offender specific treatment.  As the trial court found, "Lough's participation in substance abuse treatment . . . has not fully addressed the overall disorder which the substance abuse contributed to.  It's one large ball of wax, and I can't peel off one area of participation treatment and say, that's it, you've met criteria, and you're sufficiently changed."  The court then concluded that Lough has not

No. 82912-2-I/14

done what is "necessary for him to begin to show that he has lowered his risk and addressed the full diagnosis that got him admitted to the [SCC] in the first place as an SVP, and that is, he has not participated in sex offender treatment, and that's an undisputed fact."

Lough has not participated in sex offender treatment. The SVP statute entrusts the SCC as the entity in charge of the "control, care, and treatment" of SVPs. RCW 71.09.060(1). Lough was committed as an SVP, and therefore must participate in sex offender treatment. The SCC requiring Lough to participate in more than substance abuse treatment is reasonable enforcement under the statute and does not constitute arbitrary enforcement.

The definition of treatment under the statute is not unconstitutionally vague.

### C.

Lough next argues that the "so changed" requirement as applied to him violates procedural due process under Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d. 18 (1976). We disagree.

No state may deprive any person of liberty without due process of law. U.S. CONST. amend. XIV; WASH. CONST. 1, § 3. The procedural component of the due process clause requires that government action be implemented in a fundamentally fair manner. State v. Beaver, 184 Wn.2d 321, 332, 358 P.3d 385 (2015). We review constitutional questions de novo. State v. Derenoff, 182 Wn. App. 458, 465, 332 P.3d 1001 (2014).

In determining procedural due process protections, we "employ the Mathews test, which balances: (1) the private interest affected, (2) the risk of erroneous

-14-

No. 82912-2-I/15

deprivation of that interest through existing procedures and the probable value, if any, of additional procedural safeguards, and (3) the governmental interest, including costs and administrative burdens of additional procedures." In re Det. of Stout, 159 Wn.2d 357, 370, 150 P.3d 86 (2007).

The first Mathews factor weighs in Lough's favor as involuntary commitment is a "massive curtailment of liberty." In re Det. of Johnson, 179 Wn. App. 579, 588, 322 P.3d 22 (2014). The third Mathews factor favors the State because it "has a substantial interest in encouraging treatment, preventing the premature release of SVPs, and avoiding the significant administrative and fiscal burdens associated with evidentiary hearings." McCuistion, 174 Wn.2d at 394. Thus, the second factor is determinative here.

In McCuistion, our Supreme Court considered the procedural due process concerns of the SVP statute, and in particular, whether the requirements for establishing probable cause to gain a full postcommitment hearing satisfy procedural due process. 174 Wn.2d at 393. The court recognized that, given the "extensive procedural safeguards" in chapter 71.09 RCW, the risk of erroneous deprivation of liberty is low. McCuistion, 174 Wn.2d at 393. As for the 2005 amendments to the statute that added the probable cause requirements in RCW 71.09.090(4), the court explained:

> As noted earlier, the 2005 amendments do not alter the standard for continued commitment. The State is still required to evaluate the SVP annually to determine whether the person continues to meet the definition of an SVP. If not, a person is entitled to a full evidentiary hearing within 45 days. RCW 71.09.090(1). In addition, an SVP is entitled by statute to a show cause hearing where the State is required to present a prima facie case that the individual continues to be mentally ill and dangerous, and the SVP need only present evidence that refutes the State's probable

-15-

No. 82912-2-I/16

> cause showing. Assuming—as we must—that the legislature is correct that a single demographic is insufficient to demonstrate that the individual has "so changed" as to no longer be mentally ill and dangerous and, additionally, that change of that nature requires participation in treatment, the procedure established by the legislature ensures that individuals who remain committed continue to meet the constitutional standard for commitment, namely dangerousness and mental abnormality. Thus, it is unlikely to result in an erroneous deprivation of liberty.

McCuistion, 174 Wn.2d at 393-94.

Lough contends that his circumstances meaningfully differ from McCuistion's because, unlike Lough, McCuistion refused treatment and based his petition for release solely on a change in his age. Thus, Lough contends, the court's holding in McCuistion cannot be applied to his case. But the McCuistion court did not rely McCuistion's lack of treatment to conclude that the SVP statute satisfied procedural due process. Rather, the court concluded that the risk of erroneous deprivation was minimal as the result of the annual review process under RCW 71.09.090(1), which is presumed to determine when someone is no longer mentally ill and dangerous. McCuistion, 174 Wn.2d at 393-94. The court reiterated that a person is entitled to a trial when the annual review evaluation concludes that the person no longer meets SVP definition. McCuistion, 174 Wn.2d at 393-94.

Lough's 2019 annual review evaluation concluded that he continued to be mentally ill and dangerous. The court then concluded that the State satisfied its burden of proof. Based on McCuistion, Lough's 2019 annual review process satisfied due process. 174 Wn.2d at 393-94. The annual review proceeding provides sufficient procedural protections. Lough's as applied challenge to procedural due process fails.

-16-

No. 82912-2-I/17

### D.

Continuing his theme of trying to dictate his choice of treatment options, Lough next argues that the failure to provide PTSD treatment violates due process because without the opportunity for treatment, he does not have a realistic opportunity to be cured and released. We disagree.

Due process "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed 2d 435 (1972). The nature and duration of commitment under chapter 71.09 RCW reflect the dual purposes of commitment, which are treatment and incapacitation for the mentally ill and dangerous. In re Pers. Restraint of Young, 122 Wn.2d 1, 27, 857 P.2d 989 (1993). Those subject to civil commitment have "a constitutional right to receive 'such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition.'" In re Det. of D.W., 181 Wn.2d 201, 208, 332 P.3d 423 (2014) (quoting Ohlinger v. Watson, 652 F.2d 775, 778 (9th Cir. 1980)).

Due process requires an annual review process that grants a release trial upon a showing that Lough is no longer mentally ill and dangerous. McCuistion, 174 Wn.2d at 384, 389. As discussed above, such a change in condition can be shown either by "an identified physiological change to the person," or a change brought about "through positive response to continuing participation in treatment"—specifically sex offender treatment. RCW 71.09.090(4)(b)(i), (ii); RCW 71.09.020(21). Lough can and should undergo sexual offender specific treatment which will give him a "realistic opportunity to be cured or improve" his underlying mental abnormalities contributing to his

-17-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82912-2-I/18

dangerousness. This treatment is readily available at the SCC. But Lough refuses to participate.

Our Supreme Court has explained that there is "no talismanic significance to a particular diagnosis of mental illness." In re Det. of Thorell, 149 Wn.2d 724, 762, 72 P.3d 708 (2003). "No technical diagnosis of a particular 'mental abnormality' definitively renders an individual either an SVP or not." Thorell, 149 Wn.2d at 762. It is the "diagnosis of a mental abnormality, coupled with a history of sexual violence, which gives rise to a serious lack of control and creates the risk a person will likely commit acts of predatory sexual violence in the future." Thorell, 149 Wn.2d at 762. Specific diagnoses that comprise an individual's mental abnormality do not form the basis of commitment. Instead, it is the overarching mental illness, mental abnormality, or personality disorder coupled with dangerousness that render them appropriate for commitment.

Lough is correct that the State's expert, Dr. Packard, testified during his 2015 commitment trial that Lough suffered from ASPD, PTSD, and multiple forms of substance abuse and all three were linked to his diagnosis. But Lough ignores that his expert, Dr. First, disagreed that Lough suffered from PTSD. More importantly, the trial court's instructions to the jury and closing arguments by all parties reiterated that a finding of a specific diagnosis was not required to establish that Lough was an SVP. No special interrogatory or verdict required the jury to select and declare which diagnosis they found beyond a reasonable doubt. The jury had to find only that Lough met the definition of an SVP, that he had been convicted of a crime of sexual violence, suffered from a mental abnormality causing serious difficulty controlling his sexually violent

-18-

behavior, and that it made him likely to engage in predatory acts of sexual violence if not securely confined.  Nothing requires Lough to receive PTSD treatment to have a realistic opportunity for release.  Lough has access to sex offender specific treatment— he just refuses to participate.

Finally, Lough asserts that the trial court denied an unconditional release trial because he had not fully participated in treatment to address all of his diagnosed mental abnormalities.  Lough interprets the trial court's statement as meaning he must participate in PTSD treatment.  Lough misinterprets the court's oral ruling.  In holding that Lough had not established probable cause that he had changed through treatment, the court stated, in part:

> The big problem I'm having here, the overwhelming problem I'm having with the presentation here, is that Dr. Phenix agrees, everybody agrees, that Mr. Lough has declined to engage in any sexual offender treatment at the SCC . . . Mr. Lough hasn't done what is necessary for him to begin to show that he has lowered his risk and addressed the full diagnosis that got him admitted to the SCC in the first place as an SVP, and that is, he has not participated in sex offender treatment.  And that's an undisputed fact.

Consistent with the statute, the trial court denied Lough an unconditional release trial based on his failure to participate in sex offender specific treatment and address the manifestation of his mental disorder—offending sexually.  The trial court did not conclude that Lough must participate in PTSD treatment to establish that he was "so changed."

Lough's due process interest in receiving an unconditional release trial by showing that he has changed through treatment was not abrogated.  Lough was not entitled to an unconditional release trial because he failed to participate in the requisite

No. 82912-2-I/20

sex offender treatment.  Lough's due process claim based on the lack of PTSD treatment at SCC fails.

IV.

Lough also challenges the trial court's decision declining to grant an unconditional release trial after his 2020 evaluation.  Lough argues that because the Department's evaluator concluded he no longer met the definition of an SVP, the Department's decision to decline authorization for an unconditional release trial violated substantive and procedural due process.

A.

Lough first argues that substantive due process requires an unconditional release trial when the Department's annual review evaluation concludes the committed person has changed and is no longer an SVP.  We disagree.

Substantive due process is satisfied where "both initial and continued confinement are predicated on the individual's mental abnormality and dangerousness," which the State must justify through periodic review.  McCuistion, 174 Wn.2d at 387.  Thus, a person "may be held as long as he is both mentally ill and dangerous, but no longer."  Foucha v. Louisiana, 504 U.S. 71, 77, 112 S. Ct. 1780 118 L. Ed. 2d 437 (1992).

Our Supreme Court has repeatedly upheld the SVP statutory scheme against substantive due process claims.  In Young, the court explained that civil commitment statutes are constitutional—and will pass strict scrutiny—when they further compelling state interests and are narrowly drawn to serve those interests.  122 Wn.2d at 26.  In addressing the SVP statute, the court explained that the State has an "irrefutable" and

No. 82912-2-I/21

compelling interest in treating sex offenders and protecting society from their actions. Young, 122 Wn.2d at 26. The court concluded that the nature and duration of the commitment bears a reasonable relation to the statute's dual purposes of treatment and incapacitation. Young, 122 Wn.2d at 33-34.

The Young court also concluded that the SVP statute is narrowly drawn because it only permits detention of individuals who are both mentally ill and dangerous. Young, 122 Wn.2d at 27-35, 39. The court explained that committed persons have "a full trial with a complete range of procedural protections" and that "the statute's release provisions provide the opportunity for periodic review of the committed individual's current mental condition and continuing dangerousness to the community." Young, 122 Wn.2d at 39.

And in McCuistion, our Supreme Court upheld statutory amendments that narrow the scope of evidence a committed person could rely on to establish probable cause for an unconditional release trial. 174 Wn.2d at 385. The court held that the ability for a release trial based on the "so changed" provision is a statutory right that "provides additional safeguards that go beyond the requirements of substantive due process." McCuistion, 174 Wn.2d at 385.

McCuistion affirmed that substantive due process only requires that the State conduct periodic review of the person's suitability for release. McCuistion, 174 Wn.2d at 385. The court noted that the 2005 amendments changing the requirements necessary to gain a full evidentiary trial did not alter "the constitutionally critical annual review scheme." McCuistion, 174 Wn.2d at 388. It explained that Young upheld the SVP statute because the statute requires the State to prove beyond a reasonable doubt that

-21-

No. 82912-2-I/22

the person is mentally ill and dangerous at the initial commitment hearing and to justify continued detention through the annual review process. McCuistion, 174 Wn.2d at 388. And then, if the individual no longer meets the definition of an SVP, "'the secretary shall authorize the person to petition the court for conditional release' or 'unconditional discharge.'" McCuistion, 174 Wn.2d at 388 (quoting RCW 71.09.090(1)).

And in In re of Det. of Nelson, 2 Wn. App. 2d 621, 630, 411 P.3d 412 (2018), we rejected the argument Lough makes here—that allowing the State to present a different evaluation at the show cause hearing from that of its annual evaluation contradicts substantive due process. We explained:

> What is critical to the constitutionality of the statute is a "periodic and timely evaluation of the sexually violent person's mental health condition." In re Det. of Rushton, 190 [Wn.] App. 358, 371, 359 P.3d 935 (2015). The periodic and timely evaluation is provided for in RCW 71.09.070 by making it an obligation of the department. Allowing the prosecuting agency to present a different evaluation to make its prima facie case at the show cause hearing provided for in RCW 71.09.090(2) does not undermine the objectivity of the annual review process and is not inconsistent with substantive due process. Cases cited by petitioners do not suggest otherwise. The Supreme Court has expressly stated that at a probable cause hearing, the trial court "is entitled to consider all of the evidence, including evidence submitted by the State." McCuistion [174 Wn.2d at 382].
>
> Contrary to the argument of petitioners, allowing the state to bring in expert witnesses other than the department's evaluator is not an absurd result. A party's discretion to retain and rely on expert witnesses of its choosing is a regular component of civil and criminal proceedings.

Nelson, 2 Wn. App. 2d at 630-31.

Lough's contention that the annual review consists solely of the individual Department evaluator's annual review evaluation conducted under RCW 71.09.070 is

-22-

incorrect. McCuistion, Young, and Nelson support the proposition that the release procedures in RCW 71.09.090(1), not just the evaluation, provide the constitutionally required periodic review. McCuistion, 174 Wn.2d at 385-86; Young, 122 Wn.2d at 39; Nelson, 2 Wn. App. 2d at 630. The annual review process is not limited to the individual evaluator's evaluation, but includes review by the Department's secretary under RCW 71.09.090(1). McCuistion explained that after the annual review evaluation is completed under RCW 71.09.070, it is the Department that decides whether a person no longer meets SVP definition and can petition for release under RCW 71.09.090(1), not the individual evaluator. 174 Wn.2d at 380. Thus, it is the process, not the individual evaluator that ensures substantive due process.

Under RCW 71.09.070 and 71.09.090(1), the Department completed a forensic evaluation by an evaluator and completed a review by the senior clinical team and the Department's secretary. The senior clinical team and ultimately the secretary did not adopt the conclusion that Lough no longer meets criteria as an SVP, and thus did not authorize Lough to petition for unconditional release. The secretary considered the conclusions of the senior clinical team and the individual evaluator in making this decision.

The secretary reaching a different conclusion than the individual evaluator does not mean that the statute "permits the continued involuntary commitment of a person who is no longer mentally ill and dangerous," as Lough contends. Instead, it supports the notion that the SVP statute consists of a rigorous review process that considers

No. 82912-2-I/24

input from multiple experts and clinicians. An individual evaluator's report is not a determinative factor in the Department's conclusion.[4]

The trial court then reviewed Lough's petition under RCW 71.09.090(2). At the annual review proceeding, the State presented prima facie evidence that Lough continues to meet the definition of an SVP. The State satisfied this burden by presenting an outside expert evaluation concluding that Lough remains mentally ill and dangerous, thus justifying his commitment. See RCW 71.09.090(2)(b)(iii). And we previously held that the State's reliance on an outside expert at the annual review proceeding does not violate substantive due process. Nelson, 2 Wn. App. 2d at 630.

Lough's substantive due process rights were not violated because the annual review process as a whole ensures that he has been determined to still be l mentally ill and dangerous and that his commitment continues to be based on those reasons.

B.

Lough next argues that procedural due process requires an unconditional release trial when the Department evaluator concludes that the committed person no longer meets the criteria for commitment, even when the conclusion conflicts with the Department's final position. We disagree.

We again employ the Mathews test as discussed above. Stout, 159 Wn.2d at 370; Mathews, 424 U.S. at 335. The second factor remains dispositive. In re Det. of Hatfield, 191 Wn. App. 378, 397, 362 P.3d 997 (2015).

---

[4] Lough's contention that Young held that the Department must authorize a petition if an evaluator states that he no longer meets the SVP definition is a misstatement. Young stated that "[i]f it appears that the person is no longer a sexually violent predator then the secretary of DSHS shall authorize the detainee to petition the court for release [under] RCW 71.09.090." 122 Wn.2d at 13. This shows that it is ultimately the decision of the secretary, not the individual evaluators.

No. 82912-2-I/25

A "comprehensive set of rights for the SVP detainee already exists" under chapter 71.09 RCW. Stout, 159 Wn.2d at 370. "The risk of an erroneous deprivation of liberty under the challenged amendments [2005 treatment-based change amendments] is low" because of "the extensive procedural safeguards in chapter 71.09 RCW." McCuistion, 174 Wn.2d at 393.

The SVP statute affords a committed person a complete range of procedural protections. Young, 122 Wn.2d at 39. The State has the burden of showing that the person meets the definition of an SVP at the probable cause determination and the civil commitment trial. RCW 71.09.040; 71.09.060. The statute affords the right to a jury trial, unanimous jury verdict, and appointed counsel. RCW 71.09.050-.060; Young, 122 Wn.2d at 39. To commit, the State carries the highest possible burden of convincing the jury under the beyond a reasonable doubt standard. RCW 71.09.060(1).

These comprehensive procedural protections continue throughout commitment, including annual examinations by a qualified evaluator and the right to obtain their own qualified expert to conduct an evaluation. RCW 71.09.070. The secretary may determine the person is entitled to an unconditional release trial, but even if denied, the committed person may petition over the secretary's objection for a probable cause hearing. RCW 71.09.090(1), (2). A committed person may then obtain an unconditional release trial by presenting probable cause of a change through participation in sex offender treatment. RCW 71.09.090(4).

In the face of this "panoply of procedural protections," the refusal to order an unconditional release trial when a single Department evaluator concludes that a person no longer meets SVP definition is of little value or consequence. McCuistion, 174

-25-

No. 82912-2-I/26

Wn.2d at 393. Under the act, the trial court must order an unconditional release trial when the Department's secretary authorizes a petition for release. RCW 71.09.090(1). The secretary's authorization of a petition for release comes from the secretary's decision—the agency's final determination—that the committed person no longer meets SVP definition. The decision relies on multiple clinicians and experts, such as Department evaluators and the senior clinical team.

The additional measures of seeking outside experts, consulting the senior clinical team, and the final decision resting with the secretary do not render the Department evaluator's reports superfluous. The report has a legal effect as the State uses it to meet its burden of proof at the annual review proceeding, or it requires the State to obtain other evidence justifying commitment or concede that an unconditional release trial is warranted.

A requirement that the court must issue an unconditional release trial when a single evaluator determines a person does not meet the SVP definition would contradict the State's interest. Here, the Department's secretary and senior clinical team concluded that Lough meets the criteria for commitment, the State presented prima facie evidence in the form of an expert opinion that Lough remains mentally ill and dangerous, and Lough cannot show a change because of participation in treatment because he refused sex offender specific treatment. Lough's failure to obtain an unconditional release trial through the various provided pathways does not render the statutory scheme in violation of procedural due process as applied to him.

Lough also argues that due process requires a neutral fact finder because using hired experts, such as Dr. Fox, creates bias. But this argument is conjecture. Both

-26-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82912-2-I/27

sides are allowed to obtain outside experts, yet the final decision in the annual review process is left to the secretary—an agent of the Department itself. As we recognized in Nelson, the State's obligation to present evidence at the annual review proceeding is separate from the Department's obligation to conduct an annual evaluation, and the State's reliance on an outside evaluator at the annual review proceeding does not undermine the objectivity of the Department's process. 2 Wn. App. 2d at 630. Lough provides no basis to support his opinion about Dr. Fox and his argument based on "hired bias" fails.

Lough's procedural due process claims fail.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____          _____
Birk, J.                           Chung, J.